## No. 10,675.

F. R. BERNARD, ADMINISTRATOR, VS. WHITNEY NATIONAL BANK.

The giving of a credit in payment by a debtor does not bind third persons, unless *after* notice of the transfer or assignment has been given to or acknowledged by the party owing the credit.

Delivery of title suffices between transferrer and transferee; but as against *third* persons, possession of the credit, which is acquired only by the given notice, is essential to bind them.

A check is a valid instrument for the assignment of the credit of the drawer against the bank, but it does not bind the creditors of the drawer, who are *third* persons, unless the transfer was notified to the bank *before* a change in the title to the credit has taken place.

At the death of an assignor his property passes to his creditors and heirs, the rights of the former being then fixed, and not susceptible of being changed afterward, so that one may acquire any preference over another.

An assignment vests an inchoate title only so far as *third* persons are concerned, and, until notice to the debtor of the credit assigned has been given, the assignor's interest may be seized by his creditors and divested.

The law considers as *third* persons all the creditors of the assignor whose property is liable to them, unless a complete divestiture has taken place *previous* to any action by them against it.

At the death of an insolvent assignor all his rights to property in his name, not completely and absolutely assigned so as to bind *third* persons, pass to his insolvent succession as fully and effectually as if he had made a voluntary surrender which had been duly accepted.

A notice of a transfer of credit made *after* a change in the title to the property of the insolvent has thus occurred, comes *too late* and does not divest the rights acquired by the creditors.

In *dation en paiement* delivery and possession are essential to operate a transfer so as to exclude *third* persons. Everything doubtful or ambiguous must be interpreted against the transferee.

A change in the title *before* notice of the transfer or assignment forbids the payment by the bank to the transferee, and requires it to be made to the legal representative of the succession for distribution.

Bernard, Administrator, vs. Bank.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Farrar, Jonas & Kruttschnitt* for Plaintiff and Appellee:

1. In Louisiana all contracts between husband and wife are prohibited, excep those which pertain to the restitution of her dotal or paraphernal property appropriated by the husband.
2. Delivery is of the essence of a giving in payment. C. C., Art. 2656.
3. A husband's check given to his wife in payment of her paraphernal claims, which is not presented for payment by the wife until after the husband's death, can not be collected by the wife after the husband's death as against the administrator of his insolvent estate.
4. The giving of such check was not a payment, because a check is a means or instrument by which payment is to be effected when the money is procured thereon. The holder in such case becomes the agent of the drawer to collect the money. Woodburn vs. Woodburn, 5 Northeastern Reporter 82; Brown vs. Leckie, 43 Ill. 497; 2 Parsons on Contracts, 623; Burke vs. Bishop, 27 An. 466; Succession of DePouilly, 22 An. 97; Chitty on Bills, 306; Parsons on Notes and Bills, 82; Bolles on Banks and Their Depositors, Sec. 99.
5. A check being a mere vehicle of payment, the death of the maker of the check revokes the mandate of the drawer on the banker who holds the funds, and the vehicle is destroyed. Summers vs. Savings Society, 31 Ohio 530; Tate vs. Talbot, 2 Veazie, Jr., 111; Story on Promissory Notes, Sec. 498; Byles on Bills, 25; Chitty on Bills, 306; Parsons on Notes and Bills, 82; Bolles on Banks and Their Depositors, Sec. 99; C. C., Art. 3027.
6. It is against public policy that an insolvent and defaulting public official should be allowed to make a preferred creditor of his wife, and to transfer to her, in settlement of her alleged paraphernal claims, a large portion of his estate, she being aware at the time that he was a defaulter, and that he was insolvent.

*White & Saunders* for Defendant and Appellant:

1. There can be no *fraud* in the doing of an act or the making of a contract allowed by law in the circumstances in which it was done or made.
2. In enforcing such a contract, courts do not "consummate" any fraud, for none was attempted, but they simply recognize and enforce the legal consequences of a legal act.
3. If a check is a mandate, it is at any rate a power coupled with an interest, and is therefore revoked neither by the death nor by the insolvency of the drawer. Jacquet vs. Creditors, 38 An. 864; Renshaw vs. Creditors, 40 An. 37.
4. Death does not vest the creditors of one actually insolvent with any greater rights than, nor indeed with rights as great as, those of the creditors of a declared insolvent. The title to an insolvent decedent's property is as much in his heirs as it would have been if he had died solvent. Suc. of Conolly, 6 An. 795.
5. Where a sale is perfect between the parties, but something remains to be done to perfect it as to third persons, that remaining thing may be done after a declared surrender, and will then bind syndic and creditors. Nicolopulo vs. Creditors, 37 An. 474; Campbell vs. Slidell, 5 An. 274.

Bernard, Administrator, vs. Bank.

6. Under the reasons given in last cited cases, where the transfer of a credit or claim is perfect between the parties, it may be perfected as to third persons after the declared insolvency of the transferrer.

7. If the sale of a movable or the transfer of a credit may be perfected as to creditors after declared insolvency, it may also be perfected after death in case of the actual insolvency of the succession; and if a sale or transfer can be perfected as to creditors, *a fortiori* can either be perfected as to heirs who occupy no better position than creditors, but, on the contrary, are strictly bound by the obligations of the deceased, and are in exactly the same position that he occupied before death.

The opinion of the court was delivered by

BERMUDEZ, C. J.   The plaintiff, as the administrator of the succession of M. S. Powell, brought this action to recover from the defendant the sum of $3400 standing on its books to his credit at the time of his death, on August 21, 1885.

The bank admitted the credit; but averred that claim was laid to it by the widow of the deceased.

Mrs. Powell intervened in the suit, asserting rights to the credit, in consequence of a check of her husband in her favor, given her *in payment* of her claims against him; which check was drawn on the 20th of August previous, and presented on the 27th following to, but not honored by, the bank, on the ground of the *death* of the drawer some short time before presentment.

From an adverse judgment the intervenor appeals.

The facts disclosed by the record are the following:

On July 31, 1885, M. S. Powell deposited $3400 with the defendant bank and was credited therefor.

On August 20 following, being indebted to his wife in the sum of $3500, Powell gave her a check for the entire amount to his credit in the bank.

On the 21st, the next day, Powell died.

On the 27th of August the check was presented for payment, which was declined.

On behalf of the intervenor, it is contended that the relation of *principal* and *agent* did not exist between Powell and the bank; that the relation was that of *creditor* and *debtor;* that the check imported an assignment to the payee of the creditor's claim against the bank; that this assignment was a valid dation *en paiement*, under Art. 2446, R. C. C.; that the delivery required by Art. 2656 was effected by the delivery to the assignee of the check, which is the act of trans-

fer; that if notice was required, such was validly given, although after the transferee's death, notwithstanding his insolvency.

On the other hand it is urged that in Louisiana all contracts between husband and wife are prohibited, except those which pertain to the restitution of her dotal and paraphernal property; that a husband's check to his wife, not presented by her until after his *death*, can not be collected as against the administrator of his insolvent estate; that such a check was not a payment, a check being a means or instrument by which payment is to be effected, when the money is procured thereon; that the holder in such case becomes the agent of the drawer to collect the money; that the death of the principal revokes the agency of both, the bank and the holder, the vehicle being destroyed; that delivery is of the essence of the giving in payment and that there was none; that it is against public policy that an insolvent and defaulting public official should be allowed to make a preferred creditor of his wife by transferring to her a large portion of his estate, she being aware at the time that he was a defaulter and an insolvent.

It would serve no useful purpose to undertake to discuss and determine *all* the complicated, broad and difficult issues thus presented by the litigants.

Authorities are not wanting to sustain many of the conflicting positions by them respectively assumed.

The question presented for solution is, *after* all, the following one *only*:

Whether the drawing of a check by an insolvent, delivered by him to a creditor in payment of a claim, operates an assignment in his favor, such as entitles him to receive the amount as assignee, when claimed *after* the drawer's *death*, and without any previous presentment or certification.

In other words: Whether the condition of things existing during the drawer's life was or not changed at his *death*, and if it was, whether the change does or not prevent the check holder from recovering the amount of the check.

The contention of the intervenor strictly is: That she was a creditor of Powell; that the check was given by him to her in payment; that this giving operated in her favor an assignment and transfer of the amount to his credit; that by the title thus furnished

to her, the credit was *delivered* to her, and that this delivery included the *possession*, if any be, required by law; that this condition of things existed at his death and that the fact of his dying insolvent in no way impaired her acquired rights.

It is clear that being at the time a creditor of her husband, she could receive *payment* from him of her claim against him, and that when he issued and delivered to her the check in question, he intended to give her and she consented to receive, in payment of what was due her, the amount to his credit in the bank. There was then an assignment made to her of his credit or right to that amount, and she held the check for a valid consideration.

The "*giving in payment*" in Louisiana is an act by which a debtor gives a *thing* to the creditor, who is willing to receive *it*, in payment of a sum which is due. R. C. C. 2655.

By the same law, that "giving of payment" is perfect *only* when followed by *delivery*. R. C. C. 2656.

In the transfer of credits the delivery takes place between transferrer and transferee by the giving of the title. R. C. C. 3642.

The transferee of a credit, says the code, is only *possessed*, as regards *third persons*, after *notice* has been given to or accepted by the debtor that the transfer has taken place. R. C. C. 2643.

The check given by Powell to his wife was not *the thing* given in payment. In itself it was a worthless piece of paper, unless filled, signed and honored according to the purpose in view by the parties.

That which was intended to be *given in payment* was not any *money in bank* of Powell, for he had none there, on special deposit, or separate and apart in his name, which he could order to be delivered *in kind;* but was his claim to the amount standing to his *credit* on the books of the bank, and which the latter owed him, for as much as he had deposited as a loan with it, subject to payment *on call.*

It has, therefore, been frequently held that the giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt, in the absence of an express agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished, unless and until the check *is paid.* Daniels on N. I., 2, 638; Eng. and Amer. Enclopædia (Checks 218).

The evidence shows that it is some six or seven days, after the

*death* of Powell that the check was *first* presented to the bank and payment asked, which was refused, on account of the *death*.

It is certain that *before* that event the bank had received or accepted no notice that the check had been drawn, or that the credit had been transferred, either from Mr. or Mrs. Powell.

Surely, had the check been presented *before* the death, it could and would have been paid; but the dominant question remains. whether, *after that event*, it should have been honored.

The able counsel for the intervenor, well aware of the tenderness. and difficulty of the position, here says: "The sole test is whether any creditor of the assignor, or other assignee, has acquired a right. on the credit transferred."

So that the contention is narrowed down to the solitary inquiry whether or not, at the moment of the death, any creditor of the assignor or any other assignee has acquired a right on the credit.

It is clear that, had the check been *presented* before the death, but after the credit had been drawn against, or validly seized by judicial authority, in satisfaction of an indisputable claim, or had. Powell become a judicially declared insolvent, to the bank's knowledge, Mrs. Powell could not have been paid at all, because there. would have then existed no claim which Powell could have enforced against the bank, and because Mrs. Powell, transferee, could have had in the matter no greater right than he possessed.

Now, it is well settled in the jurisprudence of this State, that the. rights of creditors are fixed at the debtor's death, and that no one can subsequently get any advantage over others. It is likewise well established that a debtor's property is the common pledge of his creditors.

Under those just and equitable rules, all the titles which Powell had to any property standing in his name, not divested so as to bind *third* parties, passed to his succession represented by both his creditors and his heirs, if any of the latter, as effectually as if he had made a voluntary surrender which had been accepted. R. C. C. 871; R. S. 1791.

The intervenor nevertheless claims that under the settled jurisprudence of this State, as the sale of a movable or the transfer of a credit may be perfected as to creditors, *after declared insolvency*, it may be perfected *after death*, in case of actual insolvency of the succession, and the creditors and heirs are then as strictly bound by

the obligations of the deceased, after, as they were before, *the death*. In support of this bold proposition reference is made to two cases, viz: Campbell vs. Slidell, 5 An. 274; Nicolopulu vs. Creditors, 37 An. 474; Hall vs. Mulholland, 7 La. 389.

It is perfectly true that in those cases the purchasers were recognized as owners of property sold before the cession or surrender, although in the first the act of sale of an interest in real estate had not been previously recorded, and in the others delivery or possession had not followed the sale of the movables before the declared insolvency.

It must not be forgotten that we are not presently concerned with a *sale*, but with a "*giving a payment*," and that the principles which govern in one do not rule in the other.

The Code distinctly declares, R. C. C. 2656: "That giving in payment differs from the ordinary contract of sale in this, that the latter is perfect by the mere consent of the parties, *even* before delivery, while the giving in payment is made only by delivery."

It also says, on the subject of the assignment of credits, that although delivery takes place between transferrer and transferee by the giving of title, R. C. C. 2642, the transferee is only possessed, as regards *third* persons, *after* notice has been given to the debtor of the transfer having taken place, or he has accepted the transfer by an authentic act. R. C. C. 2643.

In the case of Gomila vs. Muhler, 34 An. 604, in which a sum to the credit of the defendant was claimed by three parties, (1) the bank in which the deposit had been made, (2) another bank which held a check against it, which had been presented but not paid, (3) a creditor who had attached, *after* the presentment of the check, this court held that the first claimant was not entitled to it, because it would not plead compensation against it; that the attaching creditor could not receive it, because the seizure had been effected too late, *i. e.*, after the presentment, and the court allowed the amount to the bank which held the check, because the check had operated as an assignment, perfected by *notice*, in the form of the presentment of it.

In thus holding, the court said:

"Our law, differing therein from the common law, distinctly recognizes the assignability of that class of incorporeal rights known at common law as "*choses in action*," and provides for the perfectibility

of such assignments by notice to the debtor, and entirely independent of his consent." * * *

This clearly recognizes and establishes, in cases of checks drawn against a credit in bank, that although the check may be an assignment by the drawer in favor of the drawee, that assignment is perfect and absolute as to third parties, *only* when the check has been presented and payment asked, even independent of the consent of the bank on which drawn.

It is the settled and unbending jurisprudence of this State, that the assignment of an incorporeal right vests only an inchoate title, and that *until* notice to the debtor, the assignor's interest may be seized by his creditors. H. D., p. 1382, VIII, C. I.

The law considers as *third persons* all the creditors of the assignor whose property is liable to them until a complete transfer and tradition to the assignee. 2 L. 425.

The transfer of a draft, in order to be binding on *third* persons, must be made by delivery of the draft to the transferee, and by notice to the debtor, of the transfer. 15 An. 654; L. D., 641, C. I.

Delivery is of the very essence of a *dation en paiement*, and in such cases everything doubtful or ambiguous must be interpreted against the creditor. 3 An. 280.

Until notice of the transfer of a claim has been given to the debtor, such claim, though transferred, is liable to attachment by the creditors of the transferrer. 32 An. 521; 40 An. 273.

When Powell died all his rights and obligations were transmitted to his legal representatives, who were apparently his creditors (as he was thoroughly insolvent), and his heirs, if any. R. C. C. 871, and *seq.*

These representatives acquired by his death something besides rights, which he could not have asserted had he not died, among which that of undoing seasonably any illegal acts done by him to their injury, even by resorting to *parol* proof, when he would have been estopped or required to produce only *written* evidence; likewise that of resisting the effect of a mortgage consented by him, but not recorded *before* his death or failure. R. C. C. 3363, 3362.

It will not do, in order to avoid these propositions, to say that the property passed from the deceased to his legal representatives, *cum onere*, because that is a begging of the question, for the reason

that in the instant case, under the special provisions of our law, the giving in payment was an absolute nullity as regards *third* persons, inasmuch as the check had not been presented or no notice of the transfer of the credit had been given *before* the death.

It was emphatically held in the celebrated case of Tate vs. Hilbert, 2 Veazie, Jr., 111, in which the question presented related to the effect of the death of the drawer of a check presented *after* his demise, that at the instant of the death the title vested in his legal representatives and his own order was no longer competent to withdraw any part of that which was no longer his property.

The French authorities invoked by the intervenor are to the effect that the notice given *after* a judicially declared insolvency is of no avail; also that in cases of sale the contract may be perfected, even without previous delivery, *after surrender;* also that notice may be given *after death* in cases of an acceptance by the *heirs* under benefit of inventory; but they do not *establish* authoritatively that in cases of insolvent successions the title of the deceased to credits given in payment does *not* vest in the creditors as in cases of judicial surrenders.

It is to be noted that, while Article (R. C. C.) 2642, and *seq.*, were borrowed from the French Code, the subsequent article, R. C. C. 2656, is not to be found in it and was inserted in our legislation obviously to differentiate, to some extent, between the two systems in this respect.

The title which Mrs. Powell claims to hold to the *credit* may have been good evidence of the transfer, and binding without notice to the bank on Powell and his heirs, delivery being sufficient and possession not being essential as to *them* (7 La. 389; 14 An. 700; R. C. C. 2642) ; but as to *third persons—creditors being such—*it surely was barren of all effect, for the reason that the transfer or assignment of the credit could not under *our* law, which differs from the common law, have bound them *unless* notice to the debtor, the bank, had been duly and seasonably given or had acknowledged before the death.    R. C. C. 2643.

Delivery is one thing and suffices in one instance.   Possession is another, and is essentially required in another.

While ruling as we do, we are not to be understood as holding that the death of Powell revoked the check delivered by him to his wife,

who is not a third person, for the assignment thereby made is bind-
ing between *him and her*, nor as holding that a third person holding
it would not be entitled to collect it.    What we decide is simply that
such assignment, not having been notified *before his death, he dying
thoroughly insolvent*, a change has taken place as to the title of the
credit which, at the moment of death, has passed to the mass of his
creditors, who are *third* parties, not bound without notice of the
assignment; consequently, that by such change Powell was dispos-
sessed for the benefit of his creditors, and that his order to pay, given
*before* his death, can not be executed as to them *after* that event has
occurred.   Had he died solvent, quite a different state of things
would be presented, and this case would not have arisen, for it would
have been immaterial to the heirs, as the debt existed, with what
money it would have to be paid.

It therefore follows, that as the check was not presented, paid or
certified *before* the death, or that notice of the transfer of the credit
had been given *after* that same event, a change in the title then
occurred, and that the transfer is barren of effect as to the creditors
of the insolvent assignor; that the credit belongs to his succession,
and the amount which the bank owes as standing in Powell's name
must be paid, not to the intervenor, but to the administrator of his
succession, for distribution according to law.

The District Court thought the credit had not been transferred so
as to prevent the legal representatives of Powell from acquiring title
to it, and in so finding it has correctly applied the law to the facts.

Judgment affirmed.

Fenner, J., dissents.

### DISSENTING OPINION.

FENNER, J.   The value of legal principles consists in their practi-
cal application.

We have held that a check operates as an assignment of the fund
upon which it was drawn, perfect, as between the drawer and payee,
from the moment of delivery, and binding on the bank as soon as
it is notified thereof by the presentment of the check.   Gordon vs.
Mischler, 34 An. 604;  Daniell's Neg. Inst., Secs. 1638, 1643.

This entirely removes the case from the application of those au-
thorities which are based on the contrary principle that a check is a

mere mandate, revocable by the drawer and not binding on the bank until accepted by the latter.

All authorities, which hold the view taken by this court, agree as a logical consequence that the death of the drawer operates no change in the rights of the parties.

Mr. Morse says: "It is perfectly clear that, where a check operates as an assignment, the death of the drawer will not revoke it. Whether it be with or without consideration, a right once vested can not be divested by the death of the party from whom it was acquired." Morse on Banks and Banking, Sec. 400.

Mr. Daniells says: "The idea that the death of the drawer of a check given to a payee for value operates a revocation is, as it seems to us, a total misconception of the law. * * The drawer is deemed the principal debtor; and it is anomalous to hold that his death in any wise lessens his obligations or the rights of the bank to pay it when given for value." Daniell Neg. Inst., Sec. 1618, B. and Note.

Prof. Parsons takes the same view: "The right on the part of the drawee to complete the assignment would seem to be a privilege of his own, and it is somewhat difficult to see how the death of the drawer can affect it." 2 Parsons' Notes and Bills, 287, Note.

In the case of Gordon vs. Muehler above cited, we assimilated a a check to the transfer or assignment of an incorporeal right, saying: "It will not be disputed that a written order by a creditor, addressed to a debtor, directing him to pay to a third person a debt due to the former, accompanied by due notice to the debtor, would comply with all the requirements imposed by our Civil Code, Arts. 2642 to 2654, for the valid giving of title, delivery and complete assignment of the credit or incorporeal right referred to in the order. The check, its presentation, protest, and the written notice herein given, unequivocally fulfil all these requirements."

If the death of the drawer of a check would operate to destroy the right of the payee to perfect his assignment by giving notice to the bank, the death of the assignor of any other incoporeal right would have a like effect.

There is certainly no authority for such a proposition in our jurisprudence, and the French courts and commentators agree that the death of the assignor of an incorporeal right has no such effect, and

that notwithstanding the same the assignee preserves intact his right to perfect his assignment by giving notice to the debtor. Journal du Palais, 1837, 1, p. 431; Id., 1841, 2, p. 715; 24 Laurent, No. 494; 4 Aubry & Rau 429.

A reference to these authorities will show that all the reasons assigned in the majority opinion touching the intervention of the rights of creditors as resulting from the death, etc., are considered and disposed of. They also refer to Article 3363 of our Code (C. N. 2146), which refuses effect to mortgages inscribed after the death, as declaring an exceptional principle not to be extended beyond its terms, and hold that the failure to make such provision with reference to notice of assignment of incorporeal rights exempts the latter from a like regulation.

I do not think the provisions of our law on the subject of giving in payment have any application. They apply to the giving in payment of things other than money. A check is an order for the payment of money, and is a mere vehicle or process for effecting a payment in money.

Moreover, I think the delivery referred to in Article 2656 is the delivery as between the transferrer and transferee, which, under Article 2642, takes place " by the giving of title."

I dissent.