### No. 11,004.

THE H. B. CLAFLIN COMPANY, LIMITED, VS. B. FEIBELMAN & CO.

SWEETZER, PEMBROKE & CO. ET AL., INTERVENORS.

1. A peremptory exception going to the cause of action is not waived by being referred to the merits and tried and submitted with them.

2. The indorser of a promissory note only becomes the debtor of the holder after complying with the conditions of presentment at maturity, failure of maker to pay and due notice given.

3. A demand against an indorser brought before maturity is properly rejected on exception to cause of action or even under the general issue.

4. Creditors who have attached the same property may intervene in a prior attachment proceeding by another creditor and oppose the maintenance thereof; and the *prima facie* proof of debt which the law sanctions as sufficient to authorize their attachments, is also sufficient to maintain their interventions without requiring them to anticipate the issues involved in their suits against their debtor and to make such proof as would sustain a final judgment.

5. The attachment must stand or fall according to state of facts at date of issuance and the demand in this case is not of a nature to authorize an attachment.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Buckner, J.*

---

*Gus. A. Breaux* for Plaintiffs and Appellants:

1. Proceedings in attachment, and *ex parte* affidavit made to obtain such attachment, not admissible on behalf of an intervenor, in a suit between other parties except to prove *rem ipsam*.

Claflin Co. vs. Feibelman Co.

2. An exceptor who goes to trial on the merits, on answer filed, without requiring the court to pass upon his exception, will be held to have waived such exception. C. P. 333; Mix vs. His Creditors, 40 An. 626; Boon vs. Carroll, 35 An. 284; Chaffe vs. Ludeling, 34 An. 966; Francis vs. Lavigne, 26 An. 312.

Referring an exception to the merits, on filing an answer, is a waiver of the exception.

4. And intervenor must prove his claim as against plaintiffs and defendants; and an *ex parte* affidavit made to obtain a writ of attachment is no proof. Harper vs. Railroad Bank, 15 An. 136; Washburn, Administrator, vs. Frank, 31 An. 428; Walker vs. Simon, Jr., 21 An. 671; Golsan & Co. vs. Powell, 32 An. 524.

5. In the absence of allegation and proof of injury to himself an intervenor can not assail the rights of plaintiff in any suit.

6. An intervenor can not, without allegation of. fraud or collusion, urge defences which are personal to defendant. Flemming & Baldwin vs Shields, Jones' Int., 21 An. 117; Cordell, Undertutor, vs. McCullogh, 20 An. 174; Theaver vs. Smith, 24 An. 597; Herman vs Smith, 7 U. S. 676; Clamageran vs. Ricks et al., 4 U. S. 487; Gasquet vs. Johnson, 1 La. 432.

7. National Bank vs. Moss & Co., 41 An. 227, distinguished and shown to have no application.

---

*Farrar, Jonas & Kruttschnitt* on the same side on Application for Rehearing.

---

*Read & Goodale* for Intervenors, Appellees:

1. In order to be entitled to intervene it is enough to have an interest in the success of either of the parties in the suit, or an interest opposed to both. C. P., Art. 390.

2. An intervention is a demand by which a third person is permitted to become a party to a suit, by joining plaintiff * * * or by uniting with the defendant in resisting the claims of plaintiff, or, when his interest requires it, by opposing both. Art. 389, C. P.

3. Exception as to cause of action and for prematurity not dilatory. Chaffe vs. Ludeling, 34 An. 966.

Even dilatory exceptions pleaded in answer *prior* to plea to merits will be entertained. 40 An. 626.

4. After a defence is made by a defendant, and he is joined therein by an intervenor, the defendant would not be permitted to abandon his pleas to the detriment of intervenor. Succession of Baum, 11 R. 314.

In the present case there is no abandonment of position by defendant.

All decisions which restrain intervenor from making pleas personal to defendant, and not urged by him, refer entirely to irregularities as to bond, affidavit, etc., and not to cause of action itself. 1 La. 425; 8 La. 57; 2 An. 118; 27 An. 239. Cases quoted from in brief.

6. A cause of action can no more lie on an obligation not due than if it never existed. 3 An. 33; 2 An. 498; 14 An. 426; 10 An. 324; 10 R. 533; 11 An. 368; 5 L. 225; 9 L. 457; 5 R. 189; 2 L. 221; 9 An. 562; 13 L. 404.

7. The remedy by attachment does not embrace cases of prospective and contingent liability. 10 An 324; 41 An. 227; Read vs. Ware, 2 An. 478.

8. The holder of a note can not proceed by attachment against an indorser previous to maturity. Taylor vs. Drane, 13 L. 64; Harrod vs. Burgess, 5 R 449.

9. The law in this State is settled that no recovery can be had either against the maker or indorser, without proof by plaintiff of a demand at the place designated in the note, and that too although the note is payable in another State. Hennen, p. 192.

10. And it will not suffice to show that the surety had no funds there. Ibid. Failure to protest note in season will relieve indorser.

11. Nor will it make any difference that "acceptance is waived." 10 An. 324.

12. In order to sustain attachment there must be *proof* that at the time the writ is issued the defendant had done or was about to do the act charged, "unlawful preference." Chaffe vs. MacKensie, No. 15, Vol. X, p. 371; 42 An., Southern Reporter.

13. When documents or suits are made part of petition by special allegation, all their averments become the averments of the petition, and it will be unnecessary to introduce said documents or suits in evidence specially in order to have the benefit of their allegations, and the facts shown by them.

---

The opinion of the court was delivered by

FENNER, J. The H. B. Claflin Company instituted this attachment suit against the commercial firm of B. Feibelman & Co., claiming an indebtedness as due them by the defendant of $30,970.70, of which, however, the sum of $22,500 was claimed by them as holders of three promissory notes of $7500 each, which were made by the firm of Cohn & Feibleman and endorsed by the defendant and not due at the date of suit.

The defendant firm promptly interposed an exception to the cause of action on the ground " that the action is premature and the debt not due." Subsequently, Sweetzer, Pembroke & Co., and sundry other alleged creditors of B. Feibelman & Co., who had levied attachments on the same property attached by the Claflin Company, intervened in this suit, and setting up that, as to the said claim for $22,500, it could not authorize or sustain an attachment, they prayed that, to this extent, the plaintiff's attachment be not sustained or recognized as inferior to their attachments.

This intervention was put at issue by answer, and the defendants also appeared and filed an answer to the principal suit, in which, first " reserving the benefit of the exception herein filed," they pleaded the general denial.

On January 18, on motion of defendant's counsel, without objection, the exception was referred to the merits. The cause was then assigned for trial *instanter*, and, after introduction of evidence and argument of counsel, was submitted to the court.

Judgment was rendered in favor of the Claflin Company to the extent of the debt due, with recognition of their attachment privilege, but rejecting their demand on three notes of $7500 each above referred to, and also sustaining the intervention of Sweetzer, Pembroke & Co. et al.

From this judgment the Claflin Company appeals.

The appellant claims that, by referring their exception to the merits and by going to trial on the merits without requring the court to pass on the exception, defendant must be held to have waived the exception.

He relies on the following authorities: Mix vs. Creditors, 39 An. 624; Boone vs. Carroll, 35 An. 284; Chaffe vs. Ludeling, 34 An. 966; Francis vs. Levine, 26 An. 312.

Reference to them will show that they apply only to dilatory or declinatory exceptions, the effect of which is only to retard, or change the forum of the action.

The exception here is not of that character. It is, by its terms, an exception to the "cause of action," based on the elementary proposition that the indorser of a promissory note incurs no other obligation except to pay in case the maker, on due demand at maturity, shall fail to pay and in case due and legal notice thereof shall be given to him. Hence, before maturity, the indorser is not the debtor of the holder who has no cause of action against him. Such a defence would be conclusive under the general issue, or even on application to confirm a default. It was never waived by defendant, was entirely susceptible of being referred to and tried with the merits as part of them, and, in point of fact, the judgment, though it does not mention the exception, is obviously based upon it.

We think, moreover, the intervenors properly established their right to intervene. They were attaching creditors of the same property, and made their attachment proceedings parts of their petition. These exhibited the *prima facie* proof of debt which the law sanctions as sufficient to authorize the attachment, and if they were authorized to attach they were authorized to intervene and to protect their attachment from being nullified by the allowance of a preference in favor of a prior illegal attachment. They were not bound to anticipate the issues involved in their suit against their debtor by proof of their claims such as would sustain a final judgment against him. Their interest

is too palpable to admit a dispute, since the maintenance of plaintiff's attachment would render their own futile.

The case is fully within the authority of National Bank vs. Moss, 41 An. 227, where we held that an attachment must stand or fall according to the state of facts existing at date of issuance; that in order to sustain it, the debt must be unconditional, and hence that the holder of a bill of exchange, not yet due, can not attach against the drawer of the bill because his liability does not arise until after compliance with the conditions of presentment at maturity, failure of the drawee to pay, and due notice. We can discover. no error in the judgment appealed from.

Judgment affirmed.

## ON APPLICATION FOR REHEARING.

WATKINS, J. The importance of the questions involved and the earnestness with which the application has been presented have induced us to re-examine the case.

Counsel do not, however, seem to be in agreement as to the character of the questioned contract of the defendants—one presenting the theory that, notwithstanding averment is made in the petition that their contract is one of indorsement, yet they are entitled to take judgment against them as principal debtors, on the proof in the record, admitted without objection; whilst that presented by other counsel is that, in truth, they are either sureties in *solido*, or solidary obligors, and bound primarily.

In addition to the foregoing the point is made and insisted upon that the intervenors are merely ordinary litigants, tendering issues of fact for trial, which they are bound to establish, and failing to do so, are not entitled to recover.

The case before us is a controversy between the plaintiffs as *first* attaching creditors of B. Feibelman & Co., defendants, and the intervenors as *second* attaching creditors of the same property—the latter claiming the right to *prime* the former in the distribution of the proceeds thereof, *after* the defendants' *absolute* indebtedness has been satisfied therefrom.

It is error to insist that intervenors seek to obtain a judgment in *this* suit against the defendants. They are only seeking to reduce and restrict the *amount* of plaintiffs' judgment against them so as to enable them to realize something out of the property attached.

Manifestly, the defendants' exception and answer can not affect their right. All that is necessary in order to entitle a party to intervene in a pending suit between *other* parties is that his petition shall disclose an *interest* in the success of either party, or an interest opposed to both parties. C. P. 390.

The proposition on which the intervenors mainly depend is that the plaintiffs' demand, to the extent of $22,500, is based upon indorsements of B. Feibelman & Co. upon the notes of Cohn & Feibelman, drawn to their own order, and by them indorsed and made payable at a future date and not due at date of suit; and that, on such indorsements no attachment will lie; because the obligation of an indorser is *conditional* only, and can not become *absolute* until the maker is in default for non-payment, and due presentment, protest and notice have been made.

In the assertion and maintenance of such a proposition, intervenors certainly had an interest, and, in support of such plea, it was only necessary that they should allege and prove the *existence* of their attachments, and the character of the defendants' contract. The assertion of their interest does not depend at all upon the validity of intervenors' claim against the defendants, for that is not an issue in this case.

Defendants objected to the introduction of evidence tending to establish them. The real object of their demand is to diminish the plaintiffs' claim against the defendants, so that the *extent of their privilege on the property attached* might be correspondingly reduced. In order that this object be accomplished it became necessary that the claims of the intervenors should be presented "to the court by whose mandate the property was *first seized,*" so that it should "proceed to class the privileges * * according to their rank * * in a summary manner," etc. R. S., Sec. 2903.

From the record it appears that the three notes in controversy are each for the sum of $7500, drawn by Cohn & Feibelman as makers, payable to their own order at the Importers and Traders National Bank of New York, and by them indorsed in blank. They matured respectively on the 27th of November and December 12, 1890, and 10th of January, 1891, and suit was filed and service made on the 1st of December, 1890—the very date on which the first note went to maturity.

Upon each of those notes the name of B. Feibelman & Co. is in-

dorsed in blank, immediately underneath that of Cohn & Feibelman,. without any accompanying explanatory statement.

On the same date, and contemporaneously with the service of citation, a protest of said note was made, and due notice given to both makers and indorsers, the evident purpose thereof being to *fix* the liability of the defendants.

Viewing defendants' contract as one of indorsement, pure and simple, this protest, made as it was in the city of New Orleans, was altogether unavailing, because the note was payable at a bank, in New York, and could not be presented for payment elsewhere.

It is a familiar principle, that the indorser's " undertaking is not general, but conditional upon due diligence being used against the principal debtor, and such diligence requires presentment at the place specified, where it is presumed that funds have been provided to meet the bill at maturity." 1 Dan. Neg. Ins., Sec. 644, 3d ed.

Inasmuch, as this protest was insufficient to place liability upon defendants, the three notes occupy very much the same position in this case—the defendants having become exonerated from the payment of the first, and their liability on the other two not having become absolute at date of suit.

The controversy is thus narrowed to the single question, whether B. Feibelman & Co. were really, as matter of law, *sureties* of the makers, notwithstanding plaintiffs' averment that they are *indorsers*.

This court has frequently held the law to be well settled in this . State, that one not a party to a bill or note who puts his name upon it is presumed to have done so as surety; and that, in such case his obligation will not be that of an indorser under the principles of the commercial law. 4 M. 639; 3 N. S. 659; 10 La. 374; 14 La. 386; 4 R. 161; 1 An. 248; 2 An. 592; 4 An. 273; 9 An. 533; 14 An. 144; 12 An. 517; 20 An. 348; 21 An. 25; 22 An. 41; 24 An. 468.

This rule is well recognized by text writers. Story on Prom. Notes *passim;* Chitty on Bills, p. 435; 1 Parson on Notes and Bills, 521, *et seq.*

But it is just as well settled that the foregoing rule is exclusively applicable to bills or notes payable to order, and which are subsequently indorsed by one not, originally, party thereto—the real purpose and object of an indorsement being to transfer the property in. a bill or note and to effect a legal delivery thereof to the indorsee..

From this settled principle it follows that it has no application to

such notes as those in controversy, same being payable to *bearer and not to order;* for Mr. Daniel has justly observed of the proposition under consideration, to-wit:

"If the note be payable to *bearer,* either in terms, or becomes so in effect, by being made payable to the maker's order, and then being indorsed by him, in *either case* the party who places his name on the back of it will be deemed an *indorser, only."* 1 Dan. Neg. Ins., p. 635, Sec. 707a, 3d ed.

The author cites in support of this proposition the very clear and pertinent opinion of the Massachusetts court as expressed in Bigelow vs. Colton, 13 Gray, 309, to the effect that in case the note is payable to and indorsed by the maker "it does not fall within that anomalous class of cases where a third person, neither maker nor payee, puts his name on the back of a note before its indorsement by the payee; but is the ordinary case of an indorsment of a note payable to bearer, the effect of which *can not be varied or controlled by parol proof."*

We have no hesitation in accepting this interpretation of the principles of the law merchant, and they are especially applicable to this case.

Applying them to the contract in question there is not a doubt in our minds that it was one of indorsement pure and simple, and not of suretyship or unconditional obligation.

Nor, in our opinion, does it matter, materially, that certain parol proof was introduced in reference to the disposition that was made of the proceeds of the discounted paper and without objection on the part of intervenors.

The evidence referred to is as follows, viz.:

" Q. Is the firm of B. Feibelman & Co. and Cohn & Feibelman practically one concern?

" A. Yes, sir, except with different partners. I had most of the money in both of them.

" Q. What was done with the proceeds of these notes?

" A. It was first handed to Cohn & Feibelman and then paid to me. I paid B. Feibelman & Co.'s accounts with it and continued our business.

" Q. The three notes of $7500, you mean?

" A. Yes, sir.

" Q. The proceeds of these notes were used, then, for the payment of debts created for the benefit of B. Feibelman & Co.?

" A. Yes, sir."

It shows that Cohn & Feibelman really discounted the paper, it may be for the benefit of the defendants; but that can make no possible difference, as, presumably, every indorser receives a consideration for his signature.

It shows, further, that if Cohn & Feibelman did discount their own paper, it was apparently indorsed by the defendants at the time, and the money was expended for their benefit.

Evidently, when interpreted in the light of this evidence, the undertaking of the defendants was conditional and not absolute.

A careful investigation of the law and evidence, and a comparison of our opinion made therewith, have served to confirm us in the correctness of our opinion, and, therefore, a rehearing is refused.