No. 702

First Circuit

KOCKE v. GARNIER

(December 1, 1930.   Opinion and Decree.)
(January 26, 1931.   Rehearing Refused.)

George R. Blum, of Donaldsonville, attorney· for plaintiff, appellant.

Ellis, Ellis & Ellis, of Amite, attorneys for defendant, appellee.

LᴇBLANC, J.   In this case, we are presented with this direct question:   Is the carrier's privilege on the movables carried, accorded by paragraph 9 of article 3217, Civil Code, restricted to any particular kind of carrier, or is it created in favor of the private as well as the common carrier?

The facts, as disclosed by the plaintiff's petition, are to the effect that the plaintiff and defendant entered into a certain agreement under which plaintiff was to haul, carry, and transport, for the defendant, an oil well drilling rig with all its appurtenances, from Belle Helene, in the parish· of Ascension, La., to Burnside station in the same parish, and there load the same aboard cars of the Yazoo & Mississippi Valley Railroad for shipment to some point in the state of Texas.   Defendant, under the agreement, was to pay the plaintiff for this work, the sum of $400.   Plaintiff fulfilled his part of the agreement by transporting the drilling rig and loading it on the cars of the railroad company, and, on defendant's failure to pay him the price agreed upon within five days, had a lien recorded in the office of the recorder of mortgages in the parish of Ascension.   Defendant still neglected to pay, and, three days later, plaintiff obtained an order of sequestration and had the rig seized under the privilege which he claimed.   Defendant at first filed an exception to the jurisdiction of the court ratione personæ, but then

appeared to bond the sequestration. The exception to the jurisdiction was later on abandoned. He then filed an exception of no cause or right of action, coupled with a motion to dissolve the writ of sequestration. The motion to dissolve was tried on the face of the papers and was sustained by the trial judge who at the same time condemned the plaintiff to pay the defendant attorney's fees in the sum of $25 and reserve to the latter the right to claim other damages asked for in the motion to dissolve.

As the plaintiff was entitled to the writ of sequestration if he had a privilege, we assume that the judgment of the lower court was based on the conclusion reached by it that there was no privilege. No written reasons were assigned, but we take it from the argument presented in this court that the trial judge was of the opinion that the privilege here claimed is limited to common carriers, and, as it did not appear that the plaintiff was a common carrier, he held that he did not enjoy the benefit of the law.

The article of the Code under which the carrier's privilege arises, Civ. Code, art. 3217, par. 9, reads as follows:

"The debts which are privileged on certain movables, are the following:
"1. * * *
"9. The carrier's charges and the accessory expenses, on the thing carried, including necessary charges and expenses paid by carriers. * * *"

This article is found under section 2, of chapter 3, of title 21 of the Civil Code (articles 3216-3236) under the title "Of the Privileges on Particular Movables." The same section of the same chapter in the Code of 1825 treats of the same subject-matter, and the same privilege is granted to the carrier under paragraph 9, of article 3184 of that Code. Reference to the edition of the Code of 1825 in the French tongue will show that the language used was taken verbatim from the Code Napoleon, art. 2102, and, reads as follows:

"Les creances privilegiees sur certains meubles, sont:
"1. * * *
"6. Les frais de voiture et les depenses accessoires sur las chose venturee."

One has but to compare the language quoted with that used in our present Civil Code to observe the striking similarity.

The article, being one that is transported almost literally into our law from the French Code, the views of the commentators on that Code will naturally be of valuable assistance in determining whether the law ever contemplated a distinction between carriers when it came to grant them a privilege on the movables transported by them for their charges.

Consulting a few of them, notably Delvincourt, Duranton, and Baudry-Lacontinerie, we find that certainly the French law made no distinction between carriers who transported goods by land and those who carried them over the water. Delvincourt, in his Cours du Droit Civile, volume 3, page 113, describes the business of carriage as that arising under contracts of various forms by which a person obligates himself, for an agreed price, to transport, or have transported, an object of some kind, to a designated place. The one so obligating himself personally is called "voiturier" (carrier) and the one who obligates himself to have the object transported, is a "commissionnaire" or "entrepreneur de roulage." The provisions of the chapter which he is treating, he adds, apply in general to all those who obligate themselves to transport goods, such as "les maitres de bateau" and

"les entrepreneurs de voiture publiques," which latter, he goes on to say, are, in addition, subject to special rules and regulations which form the law between them and the other citizens. Further on, in discussing the rights of the respective parties under the contract, he says:

"Outre l'action resultant de cette obligation, le commissionnaire et le voiturier ont encore un privilege pour leur remboursement, sur les objets transportes, dont ils sont saisis, privilege qui leur donne le droit de les faire vendre, avec l'autorisation de justice, jusqu'a concurrence du prix de la voiture." Marginal reference is made to article 2102.

It is to be noted that he mentions the privilege as one enuring to the "Commissionnaire" or the "voiturier" in a general way and he does not restrict it to any particular kind or class which he had described in a preceding paragraph.

Baudry-Lacontinerie, Traite de Droit Civil, in his discussion of the "privilege du Voiturier" under paragraph 6 of article 2102, Code Napoleon, is to us a bit more explicit in making it appear that the law makes no distinction between the different kinds of carriers. We quote the following:

"La creance privilegee sur les effets transportes est celle du voiturier, c'est a dire de celui qui (habituellement ou accidentellement) se charge de transporter la chose, siot par terre siot par eau."

Then, to emphasize the matter, as it appears to us, he asks the question:

"Qu'entend-on par voiturier dans l'article 2102, para. 6?"

And he answers it as follows:

"Les voituriers sont ceux qui, par profession, se chargent des transporté par terre ou par eau; telle est l'acception ordinaire du mot; dans la matiere des privileges il faut l'etendre a ceux que font accidentellement un transport a titre onereux. * * *"

The privilege, we are told further, is founded according to certain authors on the greater value that is given to the thing transported by reason of the act of transportation. Indeed, the underlying reason for all privileges on particular movables is the added advantage derived by the owner of the movable or the enhanced value given to the movable itself, by reason of the act of the one who produced that advantage or greater value. It is the nature of the act producing that result which brings into existence the privilege, and not the character of the person who performs it; and there is no reason, as far as we know, why the private carrier who performs the same service and accomplishes the same results, in so far as the movable is concerned, should not be accorded the same privilege as the common carrier.

Our law, as we view it, distinguishes between common and private carriers only because of the public nature of the business of the common carrier. The latter deal with the public as a body, and because of this they are subject to governmental regulation and control. We fail to see, however, how this distinction can in any way have any bearing on the question of privilege, if, as already stated, the consideration for the privilege is the benefit which the owner of the thing carried derives from its transportation.

In this case, the drilling rig was most probably an idle piece of machinery as long as it remained where it was at Belle Helene, but, transported to a railroad car at Burnside on its way to another destination, it became active again, as it were,

and undoubtedly of greatest service to its owner than where it was. As it was the plaintiff's act which made it of .greater service to the owner, he is, in our opinion, entitled to the privilege, regardless of the class of carrier to which he belongs.

The contention is made that the contracts between the parties in this case contemplated two different kinds of service, that is, the hauling of the machinery to Burnside and its loading there on railroad cars, and, there being no law granting a privilege for loading, the plaintiff's claim thereto does not exist. We do not agree with this contention, as we are of the opinion that the loading of the machinery on the cars was incidental to and part of the general contract of carriage. By its very nature, the contract of carriage implies a place of destination for the goods that are transported. Here, that place was on board these railroad cars at Burnside station, and, when the plaintiff transferred them from his conveyance to these cars, he was merely completing his contract of carrying them.

As the plaintiff is entitled to the privilege he claimed, and, as he had complied with the requisites of the law, he was also entitled to the writ of sequestration, and the judgment of the lower court dissolving the same was erroneous, and should be reversed.

It is therefore ordered that the said judgment be, and the same is hereby, set aside, avoided, and reversed, and that there be judgment in favor of the plaintiff, Elray Kocke, and against the defendant, Wade J. Garnier, maintaining the writ of sequestration herein issued, with recognition of the said plaintiff's lien and privilege upon the property sequestered thereon.

The defendant to pay all costs.