## GULF MOTOR LINES, Inc., v. EUROPEAN AGENCIES, Inc. (JOHN, Intervener).
### No. 14849.

Court of Appeal of Louisiana. Orleans.
June 11, 1934.

Hubert M. Ansley, of New Orleans, for appellant.

W. J. & H. W. Waguespack, of New Orleans, for appellee.

Philip S. Pugh, Jr., of New Orleans, for intervener.

JANVIER, Judge.

Gulf Motor Lines, Inc., hereinafter referred to as "The Gulf Company," was, at the time with which we are concerned, engaged in the business of transporting freight by motor-trucks.

It claims of European Agencies, Inc., $210.-37 as the contract price for the transporting of certain freight for that corporation.

Defendant, which we shall hereinafter refer to as "The European Company," admits that the indebtedness was incurred as alleged, but claims that the account has been paid in full by its check dated January 24, 1933, payable to the order of Gulf Motor Lines, Inc., and drawn on a bank in the city of New Orleans.

John N. John, Jr., joining with the Euro-

pean Company in resisting the demand of the Gulf Company, intervenes and alleges that the Gulf Company is indebted to him in a large sum for transporting freight for its account and under contract with it, and charging that a portion of the freight hauled by intervener for account of the Gulf Company was the said merchandise belonging to the European Company and for the hauling of which this suit is brought.

Intervener, John, also alleges that when European Company issued its check payable to the Gulf Company, one Harry E. Jones, agent for the Gulf Company at Lafayette, La., who, on behalf of said company, had contracted with intervener for the hauling of the said freight had obtained the check and had indorsed it over to John and had delivered it to him, the proceeds thereof to be applied as a credit against the amount due by the Gulf Company to John, but that he has not been successful in converting the said check into cash for the reason that one J. G. Miller, Sr., "purporting to be the Vice-President of Gulf Motor Lines, Inc., furnished said bank with an affidavit, * * * to the effect that Harry E. Jones signing himself as General Agent of said Gulf Motor Lines, Inc., was not an officer of said Corporation, nor had he power or authority to sign or endorse checks."

The Gulf Company, in addition to the contention that Jones was not authorized to indorse the said check, maintains that John cannot assert any right or claim by intervention, but "should be remitted to a separate suit."

In the court a qua there was judgment recognizing the right of John to intervene and upholding his claim to the check, and on the main issue there was judgment in favor of the European Company dismissing the suit of the Gulf Company.

The record shows that, though the principal office of the Gulf Company is in New Orleans, that company has a branch office in Lafayette, La., in which, at the time with which we are concerned, Harry E. Jones was its agent.

The Gulf Company obtained from the European Company a contract under which the former, as carrier, was to transport for the latter 417 bundles of galvanized iron.

The Gulf Company had no trucks of its own or had none available at that time, and therefore Jones, as the agent of that company, prevailed upon John, who was the owner and operator of a truck, to undertake the carriage of a substantial portion of the said iron.

At that time the Gulf Company was already indebted to John for similar services in a sum approximating $500 or more, and the affairs of the Gulf Company were in a very precarious financial condition. In view of this, Jones, as agent for the Gulf Company, promised John that he would obtain payment from the European Company and would turn over the said payment to John to apply on account of the amount to be earned by him in transporting the iron and as a credit against the unpaid balance.

John did not transport all of the iron, some of it having been hauled by other private truckmen employed by the Gulf Company, but when it had all been moved Jones went from Lafayette to New Orleans and obtained from the European Company its check for $210.37, the contract price, and then, in the name of the Gulf Company and as its general agent, indorsed the said check to John and delivered it to him. Before John could present it for payment at the bank on which it was drawn one J. G. Miller, Sr., styling himself vice president of the Gulf Company, delivered to the bank his affidavit in which he declared that the said indorsement of Jones "is not a bona fide and true endorsement of any officer of the company entitled to endorse checks, and Gulf Motor Lines, Inc., repudiates the same."

When the check was presented to the bank payment was refused because of the affidavit, although the record shows that there was at that time and has been at all times since to the order of the drawer of the check ample funds out of which it might have been paid.

Since the European Company, which issued the check, is now and has always been willing to have the check honored upon presentation, and since it has no interest in the demand of either of the claimants, but only desires that when its check is honored it shall thereby be fully relieved of responsibility for the freight money, it is evident that the real controversy is between John, the intervener, in whose possession the check now is, and the Gulf Company, which claims that the check should be returned to it.

We shall, therefore, first direct our attention to that phase of the litigation.

The Gulf Company denies that John may present his claim by intervention, contending that it is not sufficiently related to the issues involved in the main suit.

From article 389 of the Code of Practice we find that an intervention is "a demand by which a third person requires to be permitted to become a party in a suit between other

persons; by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff, or, where his interest requires it, by opposing both."

By article 390 of the Code of Practice the right to intervene is made to depend upon whether or not the intervener has "an interest in the success of either of the parties to the suit, or an interest opposed to both."

Since plaintiff asserts against the defendant the identical claim for which check was issued by the defendant, and since John, if the indorsement is good, holds that check, he has a very evident interest in preventing defendant from again paying that same claim. If the indorsement is good, then there has been an assignment by the Gulf Company to John, and it would be most disastrous to the rights of the latter to permit the Gulf. Company to recover on a claim which it has assigned to him.

In Blodgett Construction Company v. Board of Commissioners of Caddo Levee District (Dutten & Nattin, Interveners), 153 La. 623, 96 So. 281, 283, is found a case in which, under similar circumstances, the right of a rival claimant was permitted to be asserted by intervention. There, a general contractor had sued for payment on the main contract. Subcontractors intervened claiming that a portion, at least, of the amount sued for should be paid to them. The right to intervene was contested. The Supreme Court said: "As plaintiff and interveners are each claiming the amount admitted to be due by defendant levee board under a contract to which each of them is a party, and under which their conflicting claims have arisen, evidently interveners' petition is not foreign to the issues involved in the main action. Interveners having an interest in opposing plaintiff's claim, have a right to intervene or interplead in the present suit. C. P. articles 389, 390."

Since the Gulf Company is now hopelessly insolvent, the consequence is that if it be permitted to recover the amount of this claim and John be relegated to an independent direct action against that company he will obtain only an empty judgment, whereas if he maintains his intervention he will at least recover the amount of the payment which has been assigned to him. In effect this intervention has as its object a result something akin to an attachment. It is sought to prevent the release by the dismissal of the intervention of the right which intervener claims in and to the particular fund which is involved.

In a somewhat similar situation in H. B. Claflin Company, Ltd., v. B. Feibelman & Company (Sweetzer, Pembroke & Company et al., Interveners), 44 La. Ann. 518, 10 So. 862, 863, the Supreme Court allowed an intervention, saying: " * * * The interveners properly established their right to intervene. They were attaching creditors of the same property, and made their attachment proceedings parts of their petition. These exhibited the prima facie proof of debt which the law sanctions as sufficient to authorize the attachment, and, if they were authorized to attach, they were authorized to intervene, and to protect their attachment from being nullified by the allowance of a preference in favor of a prior illegal attachment."

We conclude that John is entitled to intervene in this proceeding.

■■■ We next consider the question of the right of Jones, the general agent of the Gulf Company at Lafayette, to indorse in New Orleans and to thereby transfer a check made payable to the Gulf Company.

Jones was the general agent of the Gulf Company at Lafayette and, on its behalf, had contracted with John for his services and for the use of his truck. At any rate we find no denial of the evidence submitted on this point by John. Jones was expressly authorized to draw and sign checks on the Gulf Company's bank account in Lafayette and he had frequently indorsed other checks payable to the Gulf Company and had thus transferred those other checks to John and to others. Here again we find no substantial contradiction of the evidence tendered by John. But most important of all we find no denial by Miller, the vice president of the Company, nor by John G. Feth, who seems to have been one of the managers of the Gulf Company in New Orleans, that Jones told them before he indorsed the check and delivered it to John that he intended to do so, and that they made no protest. Mr. Dalgarn, the president of the company, is of no assistance on this point as he knew very little about the transaction.

We conclude that Jones was authorized to indorse in this case, and that the indorsement thus constituted an assignment of the rights of the Gulf Company in the check and in the fund against which it was drawn, for the various reasons which we have given, and also because of the further fact that it was essential for Jones to indorse the check because John was entitled to a lien on the iron that had been transported. Under Civ. Code, art. 3217, par. 9, a privilege on the thing transported is granted to the carrier to protect him in the collection of his charges, and

it is held in Kocke v. Garnier, 15 La. App. 461, 131 So. 198, that this privilege is granted to the private carrier as well as to the railroads and other public carriers of that type. Therefore, when the owner of the iron paid the charges, it was absolutely essential that John be paid so that his lien might not be asserted against the transported article. It is true that his claim, for which he is entitled to a lien, amounted to only a little over $100, but to that extent, at any rate, he could have asserted his right against the iron.

For the reasons which we have given we feel that the intervener is entitled to the check in question and to receive the proceeds thereof if, upon presentation to the bank on which it is drawn, there is to the credit of the drawer a fund sufficiently large to permit of its being paid therefrom.

■ But plaintiff contends that the plea of payment, which has been interposed by the European Company and which is based on the fact that a check has been issued to and accepted by plaintiff, must fail because nothing has as yet been received on the said check, and because it is well settled that the acceptance of a check does not constitute payment until the check is honored and paid by the drawee. There is no doubt of this principle of law. Lake Charles Feed Company, Inc., v. Sabatier, 14 La. App. 233, 125 So. 318, 129 So. 261; Ocean Tow Boat Company v. Ship Ophelia, Captain & Owners, 11 La. Ann. 28; Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214; Allison v. Brown, 148 La. 530, 87 So. 262.

But here the fact that the check remains unpaid results not from any lack of funds on the part of the drawer, but solely because of the contention of the payee itself that the indorsement was not authorized.

We have held that the indorsement was authorized, and it follows that the check is now unpaid solely because of an unfounded contention of the payee.

■ Where a check is accepted in payment of an account although there is no actual payment until the funds are received, still there is a duty in the payee to present the check in due course or to permit it to be presented, and, pending presentation, the fact that the check is in existence constitutes conditional payment which status continues to exist until the check has been presented and is either paid or dishonored.

In Corpus Juris, volume 48, page 618, and also on page 594, appear statements to the effect that such a conditional payment is recognized as the true status which attaches to such a transaction.

■ Therefore, although there is a possibility that the check when presented will be dishonored it cannot be assumed that such will occur; on the contrary the presumption is that it will be paid. Therefore, since the check was accepted, plaintiff, the payee, must be considered as having been conditionally paid, and, therefore, at this time and until the contrary is shown the defense of payment must be sustained.

If the Gulf Company still had the check it could not have retained it without presentation and at the same time brought suit on the original claim. But that is in effect the present status of the matter. The Gulf Company has indorsed the check and the only thing which prevents its payment is an act, and we may add an improper act, on the part of the Gulf Company. When the check is presented by John his account against the Gulf Company will be credited with the sum of $210.37. Thus, though that company will not actually receive the cash, its bills or accounts payable will be reduced by that amount. But whether it receives the fund or not the important thing is that the money, as the result of its indorsement, will have left the account of the drawer of the check. Yarbrough v. Marks, 168 La. 57, 121 So. 301. It thus cannot resist the plea of payment, but must abide by the presumption that the check will be paid when presented. If, in due course, it is not honored, then each of the parties will be entitled to assert in a new proceeding any claims which may exist as a result of the dishonoring of the check.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.