245 So.2d 465 (1971)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
D & J REALTY COMPANY, Inc., et al., Defendants-Appellants.
No. 11577.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1971.
Rehearing Denied March 30, 1971.
Writ Refused May 13, 1971.
Theus, Grisham, Davis & Leigh by Robert Lee Curry III, Monroe, for defendant-appellantD & J Realty Company, Inc.
Snellings, Breard, Sartor & Shafto by George M. Snellings, Jr., Monroe, for appellant.
D. Ross Banister, Chester E. Martin, Jesse S. Moore, Jr., Johnie E. Branch, Jr., *466 by Jesse S. Moore, Baton Rouge, for plaintiff-appellee.
Before AYRES, PRICE and HALL, JJ.
En Banc. Rehearing Denied March 30, 1971.
HALL, Judge.
This suit was brought by the State of Louisiana, through the Department of Highways against D & J Realty Company, Inc. and Albert Thibeaux to recover the sum of $8,519.70, alleged to be the amount of an "over deposit" made by the Department and withdrawn by the defendants in an expropriation suit. The Department also sought to recover legal interest on said amount from the date of the alleged withdrawal until paid. The district court rendered judgment ordering defendants to pay to plaintiff a sum representing 5% interest on the amount of $8,519.70 from December 5, 1967 (the date of the alleged withdrawal) until paid. Defendant, Thibeaux, filed a motion for new trial which, according to the record, is still pending. Defendant, D & J Realty, perfected suspensive and devolutive appeals to this court.
The facts are undisputed and are revealed by the pleadings and a joint stipulation of facts.
On October 13, 1965, the Department of Highways filed an expropriation suit against defendants in the Fourth Judicial District Court pursuant to the provisions of La.R.S. 48:441-48:460 and deposited the sum of $95,324.00 into the registry of the court, which sum was apparently withdrawn by defendants. On October 20, 1967, the district court rendered judgment in favor of defendants and against the Department for $16,708.00 plus legal interest from the date suit was filed as additional compensation in excess of the amount previously deposited. Pursuant to this judgment, the Department on November 6, 1967, deposited into the registry of the court the sum of $18,436.02, being the amount of additional compensation plus interest. The clerk of court deposited the funds in a checking account in the Central Bank of Monroe, Louisiana.
On December 4, 1967, pursuant to motion of both defendants stating that defendants desired to withdraw the funds from the registry of the court, the district court ordered the clerk of court to pay to defendants the sum of $18,436.02. On the following day the clerk issued his check in that amount, drawn on the Central Bank of Monroe, Louisiana, payable to the order of both defendants. The check was delivered to the attorney for D & J Realty. Sometime later the attorney for D & J Realty offered to return the check to the clerk, who declined to accept it.
The check was never endorsed by either payee, nor was it ever presented for payment or cashed.
On appeal to the Second Circuit Court of Appeal the total award of the district court in the expropriation suit was increased, but writs of review were granted by the Supreme Court which ultimately rendered judgment decreasing the total award to an amount less than that awarded by the district court and deposited into the registry of the court by the Department. The judgment of the Supreme Court became final in January, 1970. The amount of the "excess" or "over" deposit by the Department was $8,519.67.
On January 18, 1970, defendants filed a rule in the expropriation suit pursuant to which the Department was ordered to show cause on February 19, 1970, why defendants should not be permitted to withdraw from the registry of the court the sum of $9,916.35, being that portion of the $18,436.02 deposited by the Department to which defendants were entitled under the judgment of the Supreme Court.
On February 9, 1970, this separate suit was instituted by the Department to recover the $8,519.70, together with legal interest from December 5, 1967, the date the clerk's check was delivered to defendants.
*467 On February 19, 1970, defendants' rule in the expropriation suit was heard and the district court entered an order rescinding its order of withdrawal of December 4, 1967, directing the clerk of court to cancel the check for $18,436.02 previously issued to defendants, directing the clerk to issue a new check for $9,916.35 to defendants, and allowing the Highway Department to withdraw the balance remaining from the registry of the court. The sum of $9,916.35 was withdrawn by defendants but the sum of $8,519.67 remains on deposit in the clerk's checking account having never been withdrawn by the Highway Department.
On September 22, 1970, the district court rendered judgment in the instant suit awarding the Highway Department a sum representing 5% interest on the amount of $8,519.70,[1] from December 5, 1967, until paid. In written reasons for judgment, the trial judge held that when the check was issued to defendants who held it in their possession, they had sole control of the funds represented by the check, could have cashed it or done anything else with it they desired and that neither plaintiff nor the court had any further control over it. The trial judge concluded that the Department was entitled to interest from the date the check was issued under the decision of the Supreme Court in State Through Department of Highways v. Busch, 254 La. 541, 225 So.2d 208 (1969), which held that the State is entitled to recover from a defendant legal interest on an excess deposit from the date of withdrawal by the defendant.
Defendant-appellant contends that the mere issuance of the check which was never cashed does not constitute a "withdrawal" of the deposit so as to create a debt upon which interest would accrue under the Busch decision. Defendant points out that the funds here remained on deposit in the clerk's bank account and were not actually withdrawn and used by defendant as was the situation in Busch. Defendant cites as authority for its position (1) Black's Law Dictionary, 4th Edition, page 1776, which defines "withdrawal" as "removal of money or securities from a bank or other place of deposit"; (2) La.R.S. 7:189 which provides that "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, * * *"; and (3) Bernard v. Whitney National Bank, 43 La.Ann. 50, 8 So. 702 (1891) which held that a check is "a worthless piece of paper, unless filed, signed, and honored according to the purpose in view by the parties."
In Busch, the Supreme Court held that any amount deposited by plaintiff and withdrawn by defendant which is in excess of just compensation as finally determined, is "owed to" plaintiff and is "a debt due to" plaintiff under La.R.S. 48:456 and the established law relating to payment of judgments subsequently reduced or reversed on appeal. The court further held that this debt should bear interest from the time it became due under Civil Code Article 1938 and that interest attached at the moment of withdrawal, "for the defendants at that moment held money which belonged to the plaintiff, and it was a debt due to the plaintiff."
The only factual distinction between the instant case and the Busch case is that here the clerk's check, although delivered to counsel for defendant pursuant to order of the court, was never actually cashed or presented for payment. The funds were never actually "withdrawn" from the clerk's bank account in which funds in the registry of the court were deposited.
In spite of the fact that the check was never cashed, it is our opinion that a debt was created and became due by defendant to plaintiff within the rationale of the Busch decision. At defendants' own request, the court ordered the funds paid to defendants. The check was written and delivered and initially accepted by counsel *468 for defendant. Effective control of the funds involved and the right to use the funds were vested in defendants. The record shows that money sufficient to pay the check upon presentment remained at all times in the account at the bank on which the check was drawn.
We do not believe the Supreme Court in Busch, employed the word "withdrawal" or "withdrawn" in a technical sense as the word might be used in a situation involving an application of the law of negotiable instruments or banking. Justice Sanders in a concurring opinion refers to the majority opinion as holding that legal interest runs from the date the opposing litigants "received the money."
The money deposited by the State was effectively paid to or received by or withdrawn by defendants when the check was delivered to them pursuant to order of the court. The payees had every right to cash the check or present it for payment and thus had effective control and use of the funds represented thereby. The money deposited was effectively out of and beyond the control of the plaintiff or the court.
In sustaining a plea of payment in a case where a check given to pay an account had never been cashed by the payee, the Orleans Court of Appeal, although recognizing the rule that a check does not constitute payment until honored and paid by the drawee, held:[1]
"Where a check is accepted in payment of an account although there is no actual payment until the funds are received, still there is a duty in the payee to present the check in due course or to permit it to be presented, and, pending presentation, the fact that the check is in existence constitutes conditional payment which status continues to exist until the check has been presented and is either paid or dishonored."
"Therefore, although there is a possibility that the check when presented will be dishonored it cannot be assumed that such will occur; on the contrary the presumption is that it will be paid. Therefore, since the check was accepted, plaintiff, the payee, must be considered as having been conditionally paid, and therefore, at this time and until the contrary is shown the defense of payment must be sustained."
Similarly, in King Finance Company v. Day, 92 So.2d 145 (La.App.Orl.1957), it was held that a garnishment against a notary who had issued a check payable to the defendant debtor had no legal basis even though the check had not been cashed. The court stated:
"The garnishment against Ramos has no legal standing whatever. The check he issued represented money and was merely a vehicle of delivery of money and the acceptance of this method of settlement by the payees is considered conditional payment of the account until the check has been presented and paid or dishonored. See Bates-Crumley Chevrolet Co., Inc., v. Brown, La.App., 141 So. 436; Gulf Motor Lines, Inc. v. European Agencies, Inc., La.App., 155 So. 523."
We hold that plaintiff is entitled to legal interest on the excess deposit commencing on December 5, 1967, the date the check was delivered to defendants.
The record shows that the attorney for defendant offered at some subsequent time to return the check to the clerk who declined to accept it. The check had been issued pursuant to an order of the court directing the clerk to pay the funds to defendants and if defendants wished to rescind the order or refuse payment at that point, the appropriate action would have been to obtain a new court order to that effect. The mere offer to return the check at a later date was not sufficient to alter the legal relationship of the parties.
*469 The district court judgment awarded interest, until paid. As noted above, an order dated February 19, 1970, was entered in the expropriation suit, rescinding the prior order of withdrawal, directing the cancellation of the prior check, directing the clerk to issue a new check to defendants for the amount due them, and allowing the plaintiff to withdraw the balance in the registry of the court. This order had the effect of returning control of the funds to the court and of divesting defendants of any control. The principal debt due by defendants was extinguished at this point and, consequently, interest ceased to accrue on the principal debt on that date.
The plaintiff could have withdrawn the funds from the registry of the court on that date without release of its claim for interest pending in this suit. The situation here differs from that in Busch where the Supreme Court held refusal of a tender of principal only direct from defendants was proper and did not bar the running of interest, citing Civil Code Article 2925.
We hold that plaintiff is entitled to legal interest on the excess deposit only to February 19, 1970.
As pointed out above, defendant, Thibeaux, moved for a new trial in the district court and the motion is still pending. The motion was filed on September 23, 1970, judgment having been rendered and signed on September 22. Defendant, D & J Realty, subsequently perfected devolutive and suspensive appeals. The question thus presented is whether a timely filed motion for new trial filed by one of two co-defendants suspends the operation of the judgment as to both defendants until the motion is acted upon in the district court. If so, this appeal would be premature and this court would be without jurisdiction.
We hold that the filing of a motion for a new trial by one defendant does not suspend the operation of a judgment as to a co-defendant who has not filed a motion for new trial.
Article 1971 of the Code of Civil Procedure provides:
"A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues."
The language of this Article is permissive and grants the trial court discretion to hold the judgment in abeyance as to all parties and issues if a new trial is granted to less than all parties or issues. Here, a new trial has not been granted to any party and the trial judge has not ordered the judgment held in abeyance. The appeal by defendant, D & J Realty, is proper.
For the reasons assigned, the amount of the judgment appealed from, insofar as it affects defendant-appellant, D & J Realty, is amended to be a sum representing 5% interest on the amount of $8,519.67 from December 5, 1967 to February 19, 1970. As amended, the judgment is affirmed, at appellant's cost.
Amended and affirmed.
NOTES
[1] The correct amount is $8,519.67.
[1] Gulf Motor Lines, Inc. v. European Agencies, Inc., 155 So. 523 (La.App.Orl.1934).