283 So.2d 212 (1973)
T. M. THURMAN d/b/a Thurman Electric Company
v.
STAR ELECTRIC SUPPLY, INC., et al.
No. 53179.
Supreme Court of Louisiana.
September 24, 1973.
*213 Walton J. Barnes, Barnes & Barnes, Baton Rouge, for defendant-applicant.
Tom H. Matheny, Pittman & Matheny; J. R. Schmidt, John D. Kopfler & Associates; Hammond, for plaintiffs-respondents.
DIXON, Justice.
We granted writs to review the dismissal of a part of the appeal of Star Electric Supply, Inc. from a judgment rendered in a concursus proceeding.
T. M. Thurman, d/b/a Thurman Electric Company, deposited checks totaling $44,702.28 with the court, alleging that he was an electrical subcontractor, that he owes $44,702.28 in connection with the subcontract, that Star Electric Supply, Inc., Stagecraft Industries, Inc. and Edwin F. Guth Company, competing claimants, should be impleaded, and praying that the money be distributed and liens canceled.
*214 Subsequent pleadings were filed by the parties impleaded and others; Star, Stagecraft and Guth each claimed all or part of the funds deposited. Each claimant made third party demands.
The case is before us only to review the judgment of the Court of Appeal dismissing part of the appeal of Star. T. M. Thurman d/b/a Thurman Electric Company v. Star Electric Supply, Inc. et al., 270 So.2d 339 (1972).
After trial in the district court, a judgment was rendered and signed on February 18, 1972 decreeing: a judgment for Stagecraft in the amount deposited, $44,702.28, recognizing Stagecraft's lien; ordering that court costs be deducted from the money on deposit, with a further provision "that there be judgment in favor of Stagecraft Industries, Inc. and against Star Electric Supply, Inc. for the total amount of court costs;" denying Thurman's demand for attorney's fees; denying Star's principal demand, third party demand, and reconventional demand; denying Guth's demand and third party demand; reserving Stagecraft's rights to proceed further against Star; denying Star's demand for attorney's fees (because of the late filing of interrogatories); and holding Star's exception of no cause of action and no right of action to the third party demands of Stagecraft to be moot, since the court found that Stagecraft was entitled to the entire deposit.
On February 23, 1972 Thurman applied for a new trial on the denial of his demand for attorney's fees and for court costs "in accordance with that certain motion dated February 16, 1972." (Thurman had also filed a rule for costs; he wished to have taxed as costs an amount he paid for a bond in connection with the proceedings).
On February 24, 1972 Guth applied for a new trial because of the failure of the court to recognize Guth's lien. (February 18, 1972 fell on Friday. The Court of Appeal found that Guth's motion for a new trial was not timely filed. We agree).
On March 27, 1972 Star filed an opposition to Thurman's rule for costs. On March 28, 1972 Stagecraft filed an opposition to Thurman's motion for a new trial.
On March 28, 1972, apparently, both the rule for costs and the motion for new trial were heard by the court. Certain stipulations were made concerning evidence.
On May 5, 1972 the court rendered judgment dismissing Guth's motion for a new trial as being untimely, and rejecting Thurman's demand for the allowance of bond premiums and granting Thurman's demand for attorney's fees. Judgment was read and signed on May 22; the judgment was as follows:
"This cause having been duly heard and submitted to the court for adjudication on the application of T. M. Thurman, d/b/a Thurman Electric Company, for the allowance of attorney's fees in the amount of $4,470.02, and the court considering the law and evidence to be in favor of T. M. Thurman, d/b/a Thurman Electric Company for the reasons orally assigned on May 5, 1972;
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of T. M. Thurman, d/b/a Thurman Electric Company, and against Star Electric Supply, Inc., Edwin F. Guth Company and Stagecraft Industries, Inc. granting T. M. Thurman, d/b/a Thurman Electric Company the amount of $4,470.02 attorney's fees to be cast as costs."
On May 24, 1972 the following judgment was read and signed:
"This cause came to be heard on March 28, 1972, in Open Court at Amite, Louisiana, on Motion for New Trial filed by the Edwin F. Guth Company and T. M. Thurman d/b/a Thurman Electric Company. Present in Open Court were Robert W. Tillery, attorney for Stagecraft *215 Industries, Inc., Tom H. Matheny, attorney for T. M. Thurman d/b/a Thurman Electric Company, and Walton Barnes, attorney for Star Electric Supply, Inc.
"After hearing the arguments of counsel and the stipulations entered into of record, the Court being of the opinion for reasons orally assigned:
"IT IS ORDERED, ADJUDGED AND DECREED That the application for new trial filed by the Edwin F. Guth Company is dismissed because the said application was not timely filed within the time delay afforded by the Code of Civil Procedure.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the application for allowance of Bond Premiums to be taxed as Court costs by T. M. Thurman, d/b/a Thurman Electric Company is denied.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the attorney's fees taxed in the proceeding (sic) paragraph shall be taxed as Court costs and accordingly, the Judgment rendered February 18, 1972, is amended only insofar as to give Judgment in favor of Stagecraft Industries, Inc. and against Star Electric Supply, Inc. for the extra amount of Court costs added by the grant of attorney's fees to T. M. Thurman d/b/a Thurman Electric Company in the proceeding (sic) paragraph.
"JUDGMENT RENDERED on May 5, 1972.
"JUDGMENT READ AND SIGNED in Open Court on the 24 day of May, 1972, at Amite, Louisiana."
The trial judge struck from the judgment signed on May 24 a paragraph dealing with attorney's fees with the notation: "A separate judgment on attorney fees has been signed."
On May 31, 1972 Star filed its notice of appeal and its bond. Star's notice stated only that it desired to appeal "from the final judgment directing the distribution of the funds in custodia legis rendered in the above numbered and entitled cause on the 18th day of February, 1972."
The Court of Appeal sustained Stagecraft's motion to dismiss Star's appeal as to all issues except as to the issue of attorney's fees for Thurman, holding that a motion for a new trial as to all parties but on less than all the issues does not automatically hold the judgment "in abeyance" as to all issues.
We conclude that the result reached by the Court of Appeal was incorrect, and that the appeal taken by Star was timely.
The former rule in Louisiana was simple: the granting of a new trial set aside the prior judgment. In Larose v. Naquin, 145 La. 1025, 83 So. 230, 232 (1919), the court said:
"The effect of the granting of the new trial was therefore the setting aside in toto of the judgment in which the error was thought to be found, and in contemplation of law it ceased to exist, and could not then, and cannot hereafter, afford the basis of a plea of res judicata, an execution, or an appeal."
At the time of the decision in the Larose case, Act 40 of 1904 stated that "... the granting of a new trial shall have the effect of setting aside the judgment..."
The Louisiana Revised Statutes of 1950 provided in 13:4214 "if the application (for a new trial or a rehearing) is granted by the court, the judgment shall be considered set aside, even though the judgment has been signed." R.S. 13:4214 was repealed and replaced by Code of Civil Procedure articles 2087, 2123 and 2252.
The Code of Civil Procedure abandoned the "one case, one judgment" theory. It is now clear that the granting of a new trial does not completely set aside the judgment previously entered. A motion *216 for a new trial by one defendant does not operate as if it were a motion for a new trial on behalf of all defendants. Wright, Jr. v. Mark C. Smith & Sons et al., La., 283 So.2d 85 (judgments rendered June 11, 1973); Wright, Jr. v. Mark C. Smith & Sons Partnership et al., La.App. 264 So.2d 304; State of Louisiana, Through Department of Highways v. D & J Realty Company, Inc. et al., La.App., 245 So.2d 465 (1971). (Writ denied 258 La. 582, 247 So.2d 396).
The Court of Appeal interpreted C.C.P. 1971 to mean that, when a new trial has been granted on part of the issues, the judgment will not be held in abeyance unless ordered by the district judge.
C.C.P. 1971 provides:
"A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues."
The final clause in C.C.P. 1971 would lead one to believe that a judgment would not be stayed unless the judge orders the stay when granting a partial new trial. But this is not the only possible construction. The object of the redactors of the Code of Civil Procedure was to develop a system under which parties could proceed efficiently to a final determination of the issues in multiparty and multiissue cases. This provision in C.C.P. 1971 was designed to mesh with C.C.P. 1915, which provides for appeals from certain judgments that decide some, but not all the issues.[1] In the cases for which article 1915 provides for partial judgments, the trial judge might, in an appropriate situation, hold a partial judgment "in abeyance as to all parties and issues." (Such action is also contemplated in C.C.P. 1038 when there are separate trials of principal and incidental demands).[2]
It is easy to accept the idea that final disposition on appeal should not, in multiparty litigation, be delayed until all issues among all parties can be decided at one time, regardless of the severability of the issues.[3] But this device has utility only when the appellate courts can make a final determination of separate issues. It would be a useless and technical trap if the rule were that, when a new trial is granted as to less than all the issues, the judgment becomes final as to all others. A new trial *217 might be granted on a factual "issue" which might change the outcome of the litigation. No one would suspect that the finding of the trial court on all other "issues" might become "final" when an important and controlling factual determination was yet to be made.
It is true that the implication from reading C.C.P. 1971 alone seems to be that if a new trial is granted on one issue (for example, liability under C.C. art. 2315), the judgment on other issues (quantum, etc.) might become "final" unless the judge orders "the judgment ... held in abeyance ..." This implication of the literal provisions of C.C.P. 1971 is simply not workableanother example of the injury suffered by the practice and procedure of this State when provisions of the federal rules are wedged into the Code of Civil Procedure.
We can adopt neither the rule as announced by the Court of Appeal nor the reasoning advanced by the appellant, who argues that C.C.P. 2087 and 2123 contain language which should be interpreted to mean that if any application for a rehearing has been timely filed, the delay for taking an appeal for any party begins to run only after the refusal to grant an application for a new trial. We are sure that it is the plan of the Code of Civil Procedure, and a workable plan in many cases, to provide for the finality of judgments in multiparty suits in which some, but not all parties, file applications for new trials. See Wright v. Mark C. Smith & Sons and Department of Highways v. D & J Realty Co., supra.
This case represents a conflict between the conventional abhorrence to "piecemeal appeals" and a liberal rule promoting the efficient disposition of litigated issues as soon as possible, without unnecessary delay while unrelated aspects of the litigation are determined. The case before us is a concursus proceeding. There is only one fund to be distributed among the parties. Not only do some of the parties impleaded contend for more than the sum deposited, but the depositor Thurman seeks the return of 10% of his deposit to pay his attorney's fees for the preparation and the filing of the concursus suit.
Those impleaded in a concursus proceeding appear both as plaintiffs and defendants. C.C.P. 4656. There was a full and complete trial of all the issues in the district court. The complete record is lodged in the Court of Appeal. If the Court of Appeal is affirmed, Star will not be eliminated as a party. Star's appeal on the issue of attorney's fees for Thurman is still alive and must be decided.
In the absence of clear and compelling reasons why Star's appeal should be dismissed, we find that the better practice is to allow the appeal. Appeals are favored in the law, and should not be dismissed unless the law clearly requires a dismissal. Smith v. Board of Commissioners of Port of New Orleans, 262 La. 96, 262 So.2d 383 (1972).
For these reasons, the judgment of the Court of Appeal is reversed, and the motion to dismiss the appeal of Star Electric Supply, Inc. is denied. Liability for costs is to be determined on the disposition of the appeal.
NOTES
[1] "A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:

"(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or interveners;
"(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969;
"(3) Grants a motion for summary judgment, as provided by Articles 966 through 969; or
"(4) Renders judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
"If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case."
[2] "The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits; and after adjudicating the action first tried, shall retain jurisdiction for the adjudication of the other.

"When the principal and incidental actions are tried separately, the court may render and sign separate judgments thereon. When in the interests of justice, the court may withhold the signing of the judgment on the action first tried until the signing of the judgment on the other."
[3] The purpose of the redactors of the Code of Civil Procedure is explained in the last paragraph of the comment to C.C.P. 1915:

"The rule that there should be one final judgment is designed to prevent multiplicity of appeals and piecemeal litigation. In cases where the rules of joinder are liberal, however, injustice could result to parties who had clearly distinct claims and who were put to the trouble of awaiting the sometimes lengthy determination of the entire suit. Statutory exceptions have, therefore, been enacted. Cf. Fed.Rule 54(b)."