318 So.2d 897 (1975)
In re Bronn Keynen SALMON and Shelis Reschel Salmon.
No. 12603.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1975.
On Rehearing September 3, 1975.
*898 Taylor, Porter, Brooks & Phillips, by W. S. McKenzie and G. Michael Pharis, Baton Rouge, for appellant.
Bodenheimer, Jones, Klotz & Simmons, by C. Gary Mitchell, Shreveport, for appellee.
Before AYRES, PRICE and HALL, JJ.
PRICE, Judge.
This is an appeal from a judgment permitting the adoption of children under 17 years of age by a step-parent and rejecting the opposition of the natural father whose consent was found unnecessary because of his failure to comply with an order to pay support for a period in excess of one year.
Michael Paul Harrington and Dwanna Salmon Harrington filed this action seeking to adopt each other's children by former marriages. Mrs. Harrington was allowed *899 to adopt the Harrington children without opposition, Mr. Harrington's former wife being deceased, and that part of the case is not before this court.
In response to Harrington's petition in which he seeks to adopt Bronn Keynen Salmon, age 9, and Shelis Reschel Salmon, age 5, the children's father, Barry Kit Salmon, filed an opposition, reconventional demand, and third party demand. All but the opposition were subsequently dismissed by consent of the parties.
Petitioner, Michael Paul Harrington, contends the consent of the natural father of the children is unnecessary as he has forfeited his rights under the provisions of Louisiana Revised Statute 9:422.1. which reads as follows:
"422.1 Adoptions by step-parent, grandparent; consent
"If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents."
The record shows that Barry Salmon and Dwanna Salmon were married in Marshall, Texas, on January 8, 1966, and of this marriage the two children sought to be adopted by petitioner were born. This marriage ended in divorce on July 13, 1971, while the Salmons were living in St. Louis County, Missouri. In the Salmons judgment of divorce rendered in St. Louis County, Missouri, Mrs. Salmon was granted custody of the two minor children of the marriage and Salmon agreed to assume the debts of the marriage and to pay $15.00 a week for each of the two children of the marriage as child support.
In September of 1971 Salmon remarried. The record reflects during this period he was current, although not prompt with his child support payments. Beginning in November of 1971 Salmon and his second wife kept the children in their home in St. Louis for a period extending to July of 1972. This was at the request of Mrs. Salmon who wanted sufficient time to establish herself in another location. At the end of July, 1972, Mrs. Salmon again took custody of the children and moved to Shreveport to live. Salmon resumed paying child support payments, which were current until the end of November of 1972. He concedes that he has not paid child support payments since November, 1972, through the filing of the instant suit in May, 1974.
Defendant, Salmon, contends the requirement for his parental consent to this adoption has not been forfeited by the operation of R.S. 9:422.1(2) for these reasons:
(1). The Missouri judgment ordering him to pay support was not an enforceable decree in the State of Louisiana without having first been recognized and made executory. Therefore, as he was a resident of Louisiana during a portion of the time his failure to pay support is alleged, there was no failure to comply with a court order as intended by the statute.
(2). The failure to pay child support was not without justification and did not constitute neglect of his parental responsibility.
*900 We find no merit in the first defense asserted by defendant. The language of the statute is clear and unambiguous and we cannot read into the statute the requirement that "a court order for support" must be a judgment which is subject to immediate enforcement by the courts of this state.
Defendant's contention that his failure to pay support was not without justification is a serious question which has caused us much concern. This defense is grounded on the judicial interpretation of R.S. 9:422.1 by the Supreme Court in In Re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963), that the legislature never intended to forfeit the parental rights of a parent whose noncompliance with a court order to pay support was for reasons beyond his control and therefore justified.
In support of his position that his failure to pay any support from November, 1972, through the filing of this action in May, 1974, was not without justification, defendant offered evidence tending to show financial inability due to excessive indebtedness and employment difficulties amplified by domestic problems resulting in the failure of his second marriage. Defendant also attempts to show he was justified in not making any payment after Harrington's marriage to Dwanna Salmon because of the attitude exhibited toward him by Harrington which lead him to believe his payment of support was not wanted, nor would it be accepted.
The evidence shows that at the time defendant was divorced from Dwanna Salmon he was employed in St. Louis by an optical firm and earned $763 per month. He remarried in September, 1971, and separated from his second wife in December, 1972. He lost his employment in June, 1973, and in August, 1973, he filed a petition in bankruptcy. He was unemployed from July until October, 1973, during which time he drew unemployment benefits of $48 per week. In October, 1973, defendant moved back to his former home in Shreveport where he was employed at a business belonging to his father. For a brief period of time around the first of the year in 1974 defendant was unemployed because his father's business burned down. Thereafter he was employed by a firm which transferred him to New Orleans and almost immediately transferred him back to a branch in Shreveport where he has continued to be employed through the date of trial of these proceedings.
Defendant testified that he contacted Dwanna Salmon on several occasions after becoming unable to pay support in November of 1972, and explained his circumstances to her. He contends she stated she understood and that she was getting along all right on her earnings of approximately $150 per week as a beauty shop operator. Dwanna Harrington acknowledged contacts were made by defendant who made promises to catch up on his support payments which were never fulfilled.
Defendant testified that upon his return to Shreveport in October, 1973, he learned of his former wife's plans to remarry. He contends he was thwarted in his efforts to visit regularly with his children and in making arrangements to resume payment of support by the actions of her new husband, Harrington. Defendant testified his wife informed him he would have to discuss such matters with her husband and that Harrington advised him he could only visit at Harrington's convenience, which turned out to be very seldom. Defendant further testified that when the subject of support was discussed Harrington declared they did not need or desire his money and if checks were sent they would be torn up.
Harrington admits making some similar comments as contended by defendant, except that he denies saying the checks would be torn up. We observe that at the time of these conversations defendant was about 11 or 12 months in arrearage on support payments.
On the basis of this evidence the Juvenile Court judge granted the petition for *901 adoption giving reasons for rejecting defendant's opposition as follows:
"After the separation and divorce of the now Mrs. Harrington, the natural mother of the children and Mr. Barry Kit Salmon, some interest was shown by Mr. Salmon in his children and at a time he actually took them into his home. And the Court can reasonably conclude that he was dutiful toward his children for a while, however, from the record it is apparent that when times got rough for various reasons, including matrimonial difficulty with his then wife he then discontinued any interest in his children and devoted his full energies to himself and none to his children. This continued on until after the marriage of the petitioner and the natural mother of the children and after this marriage Mr. Salmon and Mr. Harrington did have a conversation and according to the testimony of Mr. Harrington he said that he intended to catch up on his child support payments, to which Mr. Harrington testified that he made the statement that `we did not need his money', and he further testified that he possibly told him that they did not want it, but he was not sure of this last statement. No where in the record is there any evidence that Mr. Salmon came forward with any proposed plan to Mr. Harrington or to his former wife for the care of his children or to make any real substantial or concrete payments for their maintenance and support. Therefore, the Court is of the opinion that the neglect by Mr. Salmon was not due to any coercion by the mother of the children or by Mr. Harrington and that he was not thwarted in his efforts to support his children by the natural mother or by Mr. Harrington, the petitioner, and that it was due solely to his own neglect and the devoting of his energies and interests to himself rather than his children."
Although we are aware of the extreme consequences resulting from the granting of an adoption which results in the severance of the legal rights of the children toward one of their natural parents, we must conclude that in accord with the provisions of R.S. 9:422.1 and the controlling jurisprudence, there is no manifest error in the judgment of the Juvenile Court appealed from.
As pointed out in In Re Ackenhausen, supra, p. 383, "Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case."
Approximately one year and six months expired between defendant's last payment of any sum and the filing of the petition for adoption. The tender of the balance of arrearages by bank money order after the filing of suit is, of course, ineffective and defendant's counsel does not urge it as a bar to the proceedings. See In Re LaFitte, 247 La. 856, 174 So.2d 804 (1965). During this year and a half defendant was employed for all except three or four months. He also saw fit to contract a third marriage during November of 1973.
The finding of the trial judge that defendant was not thwarted or misled into withholding payments after the remarriage of his former wife is a close question since at the time these negotiations took place defendant was already approximately one year behind in payments and made no tender of payment of any amount during the ensuing period until suit was filed, we feel compelled to accept the trial judge's finding in this regard.
The effect of defendant's petition in bankruptcy and subsequent discharge in April, 1974, does not appear to have prevented defendant from making some bona fide effort to have attempted a compliance with his obligation of support after November of 1972. We must observe that the evidence does show defendant's ability to *902 pay did change during the summer of 1973, and had he made a reasonable effort to provide his children with a proportionate amount of his lessened ability, then his position would have been more favorable. Unfortunately, this did not occur and the total noncompliance must be construed against him.
The evidence showing he purchased a savings bond for $18.75 for each child monthly during the period between March, 1973, and September, 1973, cannot be construed as a compliance with his obligation of support of these bonds were retained by him and were cashed by him as an alternative payee in connection with his bankruptcy proceedings.
For the foregoing reasons the judgment appealed from is affirmed at appellant's costs.

On Rehearing
Before BOLIN, HALL, PRICE, DENNIS and MARVIN, JJ.
BOLIN, Judge.
We granted a rehearing in this adoption case to give additional consideration to our original findings. Of particular interest, however, is our concern of whether this court has jurisdiction to hear the appeal because of the possible failure of appellant to timely file his appeal bond. This question was noticed by this court subsequent to our original decree and was called to the attention of counsel during oral arguments on rehearing. Counsel were invited to brief this question. Subsequently appellee filed in this court a motion to dismiss the appeal and counsel have filed briefs on this jurisdictional question.

MOTION TO DISMISS THE APPEAL
The record establishes the following chronology:
1. The case was tried on July 18, 1974, and submitted on written memoranda to be filed at a later date by counsel.
2. For oral reasons made part of the transcript the trial judge found the stepfather was entitled to adopt the children.
3. The final decree was signed and filed November 22, 1974. There is no record of a notice of judgment being mailed to the attorneys, as required by Louisiana Code of Civil Procedure Article 1913.
4. The attorney for appellant made a motion for a suspensive appeal on December 2, 1974, which was granted.
5. The appeal bond was filed on January 9, 1975.
The motion to dismiss the appeal involves consideration of two questions. First, is an appeal bond required in adoption cases? Second, if a bond is required, was it filed timely so as to perfect the appeal?
On the first question appellant argues an appeal bond is not required in an adoption case and cites In Re State in Interest of Curley, 287 So.2d 558 (La.App. 1st Cir. 1973), wherein it was stated:
"The fact that the bond itself was filed approximately two months after the signing of the judgment is immaterial because no bond is required for the perfection of an appeal in a juvenile matter. The pertinent statutes relative to juvenile matters, L.R.S. 13:1571 et seq., contain no provisions for the necessity of furnishing bond as a requisite to the perfection of an appeal. A juvenile matter is neither civil nor criminal, but is sui generis." (Emphasis ours)
Curley was an appeal from an adjudication that the children were neglected and, as a consequence, they were placed in the temporary care, custody and control of their maternal aunt and uncle. We do not find the holding in Curley to be controlling of the instant case for two reasons. First, Curley was not an adoption case. Second, the statement relative to appeals from juvenile courts not requiring an appeal *903 bond is dicta since the appeal was dismissed because the motion for appeal was not timely filed.
However, In Re Diaz, 211 La. 1015, 31 So.2d 195 (1947), does state that certain juvenile proceedings are sui generis and not governed by the procedural requirements of either the Code of Criminal Procedure or the old Code of Practice. The court stated:
". . . It is argued, however, that, in view of the absence of a specific provision, the time limit exacted by either Article 542 of the Code of Criminal Procedure or Article 593 of the Code of Practice should be employed.
"The argument is not tenable. The prescriptions set forth in the Code of Criminal Procedure and the Code of Practice pertain to appeals in criminal and civil cases respectively and cannot by inference or implication be extended to appeals from the Juvenile Court in cases concerning the general welfare of children. Such cases are not to be classed as civil or criminalindeed, they are sui generis. Accordingly, appeals from judgment of the Juvenile Court involving the status of a minor child may be taken at any time since there is no prescription provided for by statute." (Emphasis added)
Other cases involving adoptions do not follow this line of decisions. In Interest of Jackson, 294 So.2d 517 (La. 1974) involved a proceeding which declared that a child had been abandoned by his father. The court granted a devolutive appeal to the father, which appeal was erroneously made returnable to the Supreme Court. The order granting the appeal fixed the appeal bond, but the bond was never filed. After the error concerning the appeal was discovered, the juvenile court granted a second devolutive appeal to the court of appeal. The court of appeal dismissed the appeal on its own motion since it concluded the juvenile court did not have jurisdiction to grant the second appeal. The supreme court affirmed on the ground that the juvenile court was divested of jurisdiction when it granted the original order to appeal to the supreme court.
The court's rationale was that one reason an appeal bond is required is to secure the payment of costs. According to Louisiana Revised Statutes 13:1585, no costs are assessable in abandonment proceedings and, therefore, no appeal bond is required. Since no appeal bond is required, the juvenile court was divested of jurisdiction on the granting of the order of appeal under the authority of Louisiana Code of Civil Procedure Article 2088. Jackson seems to narrow the holding of In Re Diaz, supra, because La.R.S. 13:1585(B) provides that the court may charge "fees for adoption cases which shall be payable in the same manner as fees in ordinary civil proceedings." If the rationale of the supreme court in Jackson is followed, appeal bonds are necessary in adoption appeals.
In Adoption of Lindsey, 302 So.2d 925 (La.App.1st Cir. 1974, writs refused), the court had an adoption proceeding before it for review. The final judgment was dated January 23, 1974. The appellant filed a motion to appeal on February 21, 1974. The order granting the appeal was signed on February 25, 1974. The appeal bond was filed on March 11, 1974. The court dismissed the appeal because it was not perfected timely. The court stated:
"As noted above, the statute provides that the appeal must be perfected within thirty days after a judgment is rendered. Adoption proceedings are not exempted from the general dispositions regulating appellate procedure, save the requirement that they be perfected in thirty days. See Ball v. Campbell, 222 La. 399, 62 So.2d 621 (1952), wherein the Court rejected the argument that appellate procedure in an adoption proceeding is different from the general rules governing appeal as then contained in the Code of Practice."
*904 Louisiana Revised Statutes 13:1591, as amended by Act 714 of 1972, concerns appeals from juvenile court judgments. The statute provides in part:
". . . An appeal shall lie on questions of law and of fact when the judgment of the court affects the custody, care or control of children under seventeen years of age, but such appeal shall be devolutive unless the court of appeal shall order otherwise. An appeal shall also lie on questions of law and of fact on both interlocutory and final judgments in adoption proceedings, proceedings to declare children abandoned. In all other cases an appeal shall lie on questions of law alone. Appeals from any final judgment of a juvenile court must be taken within fifteen days after said judgment is signed, except that in adoption proceedings appeals shall be taken as is provided by law." (Emphasis supplied)
The emphasized portion of 13:1591 refers to Louisiana Revised Statutes 9:438, which provides:
"Appeals from any judgment rendered in accordance with this Sub-part [adoptions] or from the granting or refusal of any interlocutory decree shall be to the supreme court on both law and fact. Any party to the proceedings or any other party in interest shall have the right to appeal within thirty days after the rendition of a judgment or decree. If no appeal is perfected within thirty days after a judgment is rendered, the judgment shall be final."
Although the first sentence in the foregoing section is no longer in effect, following the constitutional revision of the appellate jurisdiction in 1960 and more recently the Louisiana Constitution of 1974, Article 5, § 10, the second sentence is in effect and the appeal must be perfected within thirty days "after the judgment is rendered." See Adoption of Lemoine, 146 So.2d 12 (La.App. 3d Cir. 1962, writ denied 1963).
We also note that Louisiana Code of Civil Procedure Article 2081 states:
"The provisions of this Title are applicable to all appeals to the supreme court and the courts of appeal, except as otherwise provided by law."
The pertinent parts of Louisiana Revised Statutes 9:438 and 13:1591 only concern the time within which to perfect an appeal from an adoption proceeding in a juvenile court. Based on the Jackson and Lindsey cases and Louisiana Code of Civil Procedure Article 2081, appeals in adoption cases are governed by the Code of Civil Procedure insofar as that code does not conflict with Louisiana Revised Statutes 9:438 or 13:1591. We therefore conclude the filing of an appeal bond is required in an adoption case.
The next question is whether the appeal bond was timely filed. Relevant to this question are the following articles of the Code of Civil Procedure:
Art. 1913.
"Notice of the signing of a default judgment against a defendant on whom citation was not served personally, and who filed no exceptions or answer, shall be served on the defendant by the sheriff, by either personal or domiciliary service.
"Except as otherwise provided by Article 3307, when a case has been taken under advisement by the court notice of the signing of a final judgment therein shall be mailed by the clerk of court of the parish where the case was tried to the counsel of record for each party, and to each party not represented by counsel.
"If, at the conclusion of a trial a case is not taken under advisement but the court does not sign a judgment at the time, a party may make a request of record for notice of the date when the judgment was signed; and when such a request is made, the clerk shall mail such notice to the party requesting it or to his counsel of record.

*905 "The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
"Except as otherwise provided in the first three paragraphs of this article, notice of the signing of a final judgment is not required." (Emphasis supplied)
Art. 1974.
"The delay for applying for a new trial shall be seven days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.
"When notice of the judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913." [As amended by Act 520 of 1974]
Art. 2123.
"Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of:
(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
* * *"
[As amended by Act 129 of 1974]
Since this case was taken under advisement and the final judgment subsequently rendered, Code of Civil Procedure Article 1913 required that notice of the signing of the final judgment be mailed by the clerk of court to the counsel of record for each party. The record does not reflect that this was done. The mailing of notice of judgment is crucial under our system of appellate procedure because that date determines when the delays for moving for a new trial and the appeal delays begin to run.
If notice of judgment is not furnished as required by law, the delays for seeking a new trial or an appeal do not ordinarily begin to run. (La.C.C.P. Art. 1974, quoted supra). In Rasberry v. English, 255 So.2d 433 (La.App. 3d Cir. 1971), the plaintiff moved to dismiss the defendant's appeal. The court stated:
"In the present case, no application for a new trial was made by either party. Since the case was taken under advisement, and the judgment subsequently rendered, the law indicates that the delay of three days for applying for a new trial begins to run the day after the Clerk of Court mails notification of the rendition of judgment. Carrying this further, the delay allowed for the suspensive appeal would be fifteen days after the three-day period allowed for the applying for a new trial. The judgment was rendered as stated above, on March 2, 1971, and the appeal taken approximately 36 days later on April 8, 1971.
"The problem arises herein due to the fact that no certificate, specifying the date upon which the notice of judgment was mailed, can be found in the record. Without such an entry, it is impossible to determine whether or not the Clerk of Court complied with Article 1913 of the Code of Civil Procedure. It must be presumed that no notice was mailed as required, and therefore, the time allotted for making application for new trial, as well as for taking suspensive appeal, has not yet begun to run. Defendants' suspensive appeal must therefore be considered as having been timely perfected. Soileau v. Tri-State Mutual Insurance Company, 206 So.2d 716 (La.App. 3rd *906 Cir., 1968); Georgia-Pacific Corp. v. Jim Walter Corp., 178 So.2d 794 (La.App. 3rd Cir., 1965); Kinchen v. Kinchen, 256 La. 28, 235 So.2d 81 (1970); Robertson v. Norwood, 234 So.2d 509 (La.App. 4th Cir., 1970); Boudreaux v. Allstate Finance Corporation, 217 So.2d 439 (La.App. 1st Cir., 1968).
"For the foregoing reasons, the motion by the plaintiff-appellee to dismiss defendants-appellants' suspensive appeal is denied."
A jurisprudential rule has developed that if the required notice of judgment is not given by the clerk of court, the filing of a motion to appeal serves as a waiver of the notice of judgment. In Carlisle v. Carlisle, 313 So.2d 908 (La.App. 2d Cir. 1975), a case involving custody of children, the trial was completed on October 21, 1974 and the case taken under advisement. Final judgment was rendered on November 12, 1974, and on the same day plaintiff asked for and was granted an appeal. The required notice of judgment under C.C.P. article 1913 was not given. Fifty-six days following the day the final judgment was signed and the appeal was granted, plaintiff filed his appeal bond. The appeal was dismissed, the court stating:
"However, where the appellant's attorney moves for and is granted an appeal prior to the service on him of the notice of judgment, the purpose of serving the notice has been fulfilled and the delay for perfection of his appeal should begin to accrue on this date. The reason for the requirement that the clerk mail notice of final judgment is to inform the litigants whose case has been taken under advisement of the date of the signing of the judgment so that they may timely move for a new trial or an appeal. Therefore, a motion made by a party for an appeal constitutes a waiver of the requirement that he be given notice of judgment. This result is in accord with the decisions in X-L Finance Company v. Hollinger, 185 So.2d 873 (La.App. 3d Cir. 1966); and McNeely v. American Live Stock Insurance Co., 269 So.2d 529 (La.App. 1st Cir. 1972). We conclude, therefore, that the delays for perfecting the appeal began the day plaintiff-appellant asked for and was granted a devolutive appeal, and expired prior to the filing of the bond 56 days later."
We have carefully examined the opinion in Carlisle, the cases cited therein and other cases relating to the same subject. The broad statement is made in many of these cases that, where notice of judgment is required but not given, the delay for perfecting an appeal begins tolling from the date an appeal is granted.
However, the instant case contains a problem not present in Carlisle or in any other case this court examined. The appellant's bond would be timely filed if, but only if, the appeal delays included not only the thirty-day delay for perfecting an appeal provided for in La.R.S. 9:438, but also the additional seven days exclusive of holidays in which to move for a new trial. In all the cases examined by this court, it made no difference in the result that the delay to move for a new trial was not considered in the computation of the time in which to perfect an appeal. In all the cases the delays for applying for a new trial plus the delays for appealing had expired prior to the perfection of the appeal or the record was not clear whether the delay for a new trial was made an issue. We do find the clear holding in all of the cases to be that when an appellant asks for and receives an appeal from a final judgment, he thereby waives notice of judgment if such notice is required.
In the instant case if appellant only waived notice of judgment by taking his *907 appeal on December 2, 1974, he had seven days exclusive of legal holidays (C.C.P. 1974, quoted supra) from December 3, 1974 to ask for a new trial, which delay would not have expired until December 12, 1974. Following this rationale, the thirty-day delay for perfecting his appeal would not have begun until December 13, 1974. (C.C.P. art. 2123, cited supra), and expired on Monday, January 13, 1975. (C.C.P. art. 5059). The appeal bond filed on January 9, 1975, would thus have been timely. We adopt this rationale and hold the appeal was timely perfected.
We reach this conclusion for two principal reasons. First, appeals are favored in the law and should not be dismissed unless the law clearly requires a dismissal. Smith v. Board of Commissioners of Port of New Orleans, 262 La. 96, 262 So.2d 383 (1972); Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La.1973).
Second, as pointed out herein, we are unable to find any law that clearly states the taking of an appeal waives the delays for applying for a new trial. To the contrary, in American National Insurance Company v. Ramon, 204 So.2d 798 (La.App. 4th Cir. 1967), a motion for a new trial was filed, tried and denied after orders of appeal were taken. While the question of whether the delays for perfecting this appeal began from the date of the order of appeal or the date the new trial was denied was not directly at issue, the implication is clear that the delays would begin from the date the motion for new trial was denied.

MERITS AND DECREE
After a painstaking review of the record we conclude there is ample evidence to support the judgment of adoption, and accordingly our original decree affirming the judgment of the lower court at appellant's cost is reinstated.