STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC09-1335

STATE IN THE INTEREST OF
J.Y.M.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 22261
HONORABLE LILYNN CUTRER, DISTRICT JUDGE
HONORABLE HILLARY J. CRAIN

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.

**APPEAL DISMISSED IN PART; AFFIRMED IN PART.**

Catherine L. Stagg, Attorney at Law
426 Kirby Street, Suite A
Lake Charles, LA 70601
Counsel for Appellant:
     P.J.M. (Father)

Alberto DePuy, Attorney at Law
Calcasieu Parish District Attorney's Office
1020 Ryan Street
Lake Charles, LA 70601
Counsel for Appellee:
     State of Louisiana

Stephen Berniard, Attorney at Law
1011 Lakeshore Drive, Suite 500
Lake Charles, LA 70601
Counsel for Appellee:
     Office of Community Services

James Gaharan, Attorney at Law
700 E. College Street
Lake Charles, LA 70605
Counsel for Appellee:
     Y.L.S. (Mother)

**PAINTER, Judge.**

P.J.M. appeals several rulings by the trial court adjudicating his minor daughter, J.Y.M., as a child in need of care. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

J.Y.M. is the minor daughter of P.J.M. and Y.L.S. Y.L.S. is a citizen of Honduras. P.J.M was granted legal custody of J.Y.M. by the Honduran courts and returned to the United States with J.Y.M.

OCS first became involved with P.J.M. and J.Y.M. in September of 2007, following a complaint that the child was not being properly supervised. J.Y.M. was three years old at the time. On November 14, 2007, Elizabeth Thornhill, an attorney for the Mental Health Advocacy Service's Child Advocacy Program, was appointed to represent J.Y.M. and continues to represent J.Y.M. to date. J.Y.M. was placed in foster care for approximately a year before being returned to P.J.M. in November of 2008.

During the course of those proceedings, P.J.M. was ordered to pay an expert witness fee. *See State in the Interest of J.Y.M.*, 09-1333 (La.App. 3 Cir. ___/___/2010), ___ So.2d ___. He was found in contempt of court for failure to appear in court and to pay as ordered and was arrested on March 10, 2009, and sentenced to serve thirty days. OCS obtained an instanter order on March 11, 2009, and placed J.Y.M. in state custody. At that time, J.Y.M. was five years old.

On March 12, 2009, the State filed a petition to adjudicate J.Y.M. as a child in need of care due to P.J.M.'s incarceration. On April 13, 2009, that petition was amended to include allegations of mental cruelty.

Both P.J.M. and J.Y.M. were evaluated by a psychologist, Dr. John Simoneaux. Dr. Simoneaux diagnosed P.J.M. with delusional disorder, persecutory and grandiose type, as well as narcissistic personalty disorder and opined that this disorder had a direct and adverse ability on P.J.M.'s ability to serve as J.Y.M.'s primary caregiver. Dr. Simoneaux further opined that P.J.M.'s disorder had manifested itself through P.J.M.'s belief that J.Y.M. was sexually abused, drugged, physically and emotionally

1

abused while in state custody. Dr. Simoneaux concluded that P.J.M. was "quite ill" and that his actions toward his daughter constituted emotional abuse. Dr. Simoneaux also stated that the disorders which P.J.M. had were very difficult to treat because people with these disorders see no need for treatment and because medications do not typically help.

An adjudication hearing was held May 6-8, 2009, and J.Y.M. was adjudicated as a child in need of care.[1] P.J.M. filed a motion for new trial, which was dismissed as being untimely filed. A motion to reconsider the dismissal was also denied. The disposition hearing was held on June 2, 2009[2], and it was ordered that J.Y.M. was to remain in State custody. A judgment to that effect was signed on June 16, 2009.

Catherine Stagg, P.J.M.'s attorney, filed a motion to withdraw, and the order granting her withdrawal as counsel of record was signed on June 22, 2009. In the meantime, the judgment of disposition was served on P.J.M. through Ms. Stagg on June 23, 2009. The judgment was served on P.J.M. personally on June 26, 2009. P.J.M., pro se, filed two motions for appeal, one dated June 24, 2009 and another dated July 2, 2009. The orders of appeal were signed July 1 and July 6, respectively. Both motions for appeal are dated stamped as being filed on July 6, 2009. On appeal, P.J.M. alleges four assignments of error:

1. The Trial Court had no authority to order (on January 21, 2009) a child to be taken into custody in anticipation of an arrest on a bench warrant, when the underlying offense was not in any way related to parental fitness or moral turpitude.

2. The OCS had insufficient basis to seek, and the Court erred in granting, an *Instanter* Order at the time of the arrest on March 10, 2009, when the underlying offense was not in any way related to parental fitness or moral turpitude, and when no consideration whatsoever was given to alternative placement of the child.

3. The Trial Court did not properly apply the legal definition of "emotional abuse" or "emotional maltreatment" to the facts of this case.

---

[1]This hearing was conducted by the Honorable Hillary J. Crain.

[2]This hearing was conducted by the Honorable Lilynn Cutrer

4.    The minor did not receive adequate legal representation in accord with the standards set forth by the Louisiana Supreme Court, and therefore the child in reality received no legal representation whatsoever.

Although the State filed a brief in this matter, we note that its right to oral argument was voluntarily waived. Further, we are aware that proceedings to terminate P.J.M.'s parental rights went forward in March of 2010, under a different docket number in the district court; however, issues as those proceedings are not now before us.

### DISCUSSION

We must first address the State's argument that this appeal is untimely. Louisiana Children's Code Article 332 states, in pertinent part:

A.    Except as otherwise provided within a particular Title of this Code, appeals shall be taken within fifteen days from the mailing of notice of the judgment. However, if a timely application for a new trial is made pursuant to Paragraph C, the delay for appeal commences to run from the date of the mailing of notice of denial of the new trial motion.

B.    Notice of judgment, including notice of orders or judgments taken under advisement, shall be as provided in Code of Civil Procedure Article 1913.

With respect to the instanter order issued on May 11, 2009, the State argues that the notice was mailed to it on May 12, 2009, and served on all other parties, including P.J.M. personally and through his counsel of record, on May 12, 2009, such that the appeal delay would have expired on May 27, 2009. No such appeal was taken during that time frame. P.J.M. argues that the notice was never mailed as required by the code article such that his appeal is timely, if not premature. No one disputes the fact that P.J.M. received the notice.

This court has long recognized that "if an appellant moves for and is granted an appeal prior to service of notice, he is deemed either to have notice or to waive notice." *Tarver v. Anderson*, 358 So.2d 1000 (La.App. 3 Cir. 1978), *citing X-L Finance Company v. Hollinger*, 185 So.2d 873 (La.App. 3 Cir. 1966) and *In re Salmon*, 318 So.2d 897 (La.App. 2 Cir. 1975). The fact that the clerk's office did not mail the notice is irrelevant in this case as P.J.M. was personally served with all of

the notices. Thus, we agree with the State that P.J.M.'s appeal with respect to the instanter order is untimely, and we dismiss the appeal insofar is it raises issues related thereto. Accordingly, we will not consider P.J.M.'s first and second assignments of error.

With respect the adjudication judgment signed June 16, 2009, we find that this appeal was timely filed because Ms. Stagg had withdrawn as counsel of record before the notice was served on P.J.M. through Ms. Stagg and that notice was not served on P.J.M. personally until June 26, 2009. Therefore, he had until July 11, 2009 to file his motion for appeal. Both motions for appeal were filed on July 6, 2009 and were timely.

We will now address P.J.M.'s third and fourth assignments of error. P.J.M. asserts, in his third assignment of error, that the trial court did not properly apply the legal definition of "emotional abuse" or "emotional maltreatment" to the facts of this case. The basis for the charge of emotional abuse is found in numerous video recordings P.J.M. made of "interviews" with J.Y.M. over a period of some four months. These "interviews" consisted of P.J.M. questioning J.Y.M. about her treatment in foster care. Dr. Simoneaux opined that P.J.M. was "manufacturing" evidence to prove his allegations that J.Y.M. was sexually and physically abused while in foster care. Dr. Simoneaux further opined that P.J.M.'s behavior in this regard was "paranoid and manipulative." Dr. Simoneaux was of the opinion that this behavior constituted emotional abuse and bordered on sexual exploitation. He could not say with certainty whether J.Y.M. had been sexually abused because he felt that she was an unreliable witness because of P.J.M.'s influence on her. However, Dr. Simoneaux did note that J.Y.M. did not display any signs of distress or discomfort.

In his written reasons for judgment, Judge Crain noted that he was particularly impressed with Dr. Simoneaux's credentials and that Dr. Simoneaux was an impressive witness. Judge Crain further noted Dr. Simoneaux's conclusion that because of P.J.M.'s influence, J.Y.M. was no longer a reliable reporter of any possible abuse to her such that it left her extremely vulnerable to future abuse. Judge Crain

4

found that P.J.M. inflicted mental injury to J.Y.M. which seriously endangered her emotional health and that this constituted abuse under La.Ch. Code art. 603(1).

P.J.M. argues that the recordings of the "interviews" show that J.Y.M. is fully clothed, bouncing around, is not uncomfortable with her father, and that he is not mean or threatening to her. He further argues that neither the State nor the court clarified what actions of his constituted abuse. Counsel for J.Y.M. argues that "P.J.M.'s continued insistence that J.Y.M. suffered no harm is a clear indication of how little he values his daughter's credibility and her safety." We note that it is the continued pattern of conduct, as evidenced in the video recordings, and his mental disorders that both the State and the trial court found to constitute abuse.

We review the juvenile court's findings of fact under the manifest error standard of review, we cannot set aside such findings of fact in the absence of manifest error or unless those findings are clearly wrong. *In re A.J.F.*, 00-0948 (La.6/30/00), 764 So.2d 47. In *State ex rel. D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted that:

> [I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. *Id*. at 62. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id*.; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*.; *see Pinsonneault v. Merchants & Farmers Bank & Trust* Co., 2001-2217 (La.4/3/02), 816 So.2d 270.
>
> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*.

At the adjudication hearing, the State has to prove, by a preponderance of the evidence, that the child is a child in need of care. La. Ch.C. art. 665. Based on Dr.

Simoneaux's findings and testimony, Judge Crain found that the State met its burden. Contrary to P.J.M.'s assertions, the record contains sufficient evidence to support the trial judge's findings that P.J.M.'s behavior in conducting numerous questionable interviews of J.Y.M. contributed to the J.Y.M.'s emotional and psychological harm as described by Dr. Simoneaux. We cannot say that the trial judge misapplied the legal definition of emotional abuse. We find no manifest error therein.

In his fourth assignment of error, P.J.M. argues that J.Y.M. did not receive adequate representation of counsel. P.J.M. argues that J.Y.M. has expressed her desire to return to live with her father to Dr. Simoneaux, the case worker, and to Ms. Thornhill. He further argues that Ms. Thornhill has been derelict in her duty to represent the child's wishes as required by the Louisiana Supreme Court Rule XXXIII concerning legal representation of children in child in need of care cases.

Louisiana Children's Code article 607(A) provides:

> In every proceeding under this Title, the court shall appoint qualified, independent counsel for the child, including a referral to the district public defender. If attorneys are available through the Child Advocacy Program, the court shall contact the office of the program and request the assignment of an attorney who shall be appointed. Neither the child nor anyone purporting to act on his behalf may be permitted to waive this right.

Louisiana Supreme Court Rule XXXIII, Subpart II, Standard 4, provides, in pertinent part, that the attorney appointed to represent the child has a basic duty to:

> 6) Determine the client's desires and preferences in a developmentally appropriate and culturally sensitive manner;

> 7) Advocate for the desires and expressed preferences of the child and follow the child's direction throughout the case in a developmentally appropriate manner[.]

The record reflects that Ms. Thornhill was present all relevant times, including this appeal, and that she provided adequate representation of the child's wishes in this case. She has also indicated that, in this case, the child is only five years old. She has also indicated her belief that there was no factual basis on which to file an opposition to the adjudication on behalf of the child. Thus, we find no merit in this assignment of error.

**DECREE**

For all of the foregoing reasons, we dismiss that portion of the appeal dealing with the trial court's instanter order issued on May 11, 2009. With respect to the trial court's adjudication that J.Y.M. is a child in need of care whose custody must be maintained with OCS, we affirm.

**APPEAL DISMISSED IN PART; AFFIRMED IN PART.**