# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

**10-841**
**consolidated with**
**10-842**

**STATE OF LOUISIANA**

**IN THE INTEREST OF**

**J.Y.M.**

**********

**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, NOS. 22261 & 22983**
**HONORABLE LILYNN CUTRER, DISTRICT JUDGE**

**********

**JAMES T. GENOVESE**
**JUDGE**

**********

Court composed of Jimmie C. Peters, James T. Genovese, and David E. Chatelain,* Judges.

**AFFIRMED.**

**P.J.M.**
**In Proper Person**
**921 Martin Luther King Highway**
**Lake Charles, Louisiana 70601**
**(337) 656-8512**
**DEFENDANT/APPELLANT**


**Robert J. Elliott**
**Department of Children and Family Services**
**Post Office Box 832**
**Alexandria, Louisiana 71309-0832**
**(318) 487-5218**
**COUNSEL FOR APPELLEE:**
        **Louisiana Department of**
        **Children and Family Services**

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Stacey C. Naquin, Assistant District Attorney**
**Post Office Box 1388**
**Jennings, Louisiana  70546**
**(337)824-1893**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**


**Edward T. Nichols, Jr.**
**827 Pujo Street**
**Lake Charles, Louisiana  70601**
**(337) 439-8587**
**COUNSEL FOR DEFENDANT:**
**Y.L.S.**


**Elizabeth Thornhill**
**Child Advocacy Program**
**1011 Lakeshore Drive, Suite 305**
**Lake Charles, Louisiana  70601**
**COUNSEL FOR THE MINOR CHILD:**
**J.Y.M.**


**Douglas K. Hall**
**901 Lakeshore Drive, Suite 700**
**Lake Charles, Louisiana  70629**
**COUNSEL FOR DEFENDANT:**
**P.J.M.**


**Catherine L. Stagg**
**426 Kirby Street, Suite A**
**Lake Charles, Louisiana  70601**
**COUNSEL FOR DEFENDANT:**
**P.J.M.**

**GENOVESE, Judge.**

P.J.M.,[1] the biological father of the minor child, J.Y.M.,[2] appeals the judgment of the trial court terminating his parental rights and certifying the minor child to be eligible for adoption.[3] Additionally, P.J.M. has filed with this court a Motion for Clarification and for Verification of Jurisdiction. For the following reasons, we affirm the trial court's judgment and deny the motion.

## FACTUAL AND PROCEDURAL HISTORY

On January 6, 2010, the State of Louisiana, through its Department of Social Services, Office of Community Services (State), filed a Petition for Termination of Parental Rights and Certification of Minor Child for Adoption. The minor child, J.Y.M. (date of birth December 18, 2003), was taken into the State's custody on March 10, 2009, and was adjudicated as a child in need of care by judgment signed June 16, 2009. According to the State's petition:

> The . . . removal [of J.Y.M. on March 10, 2009] is not the first time that said minor child was removed, adjudicated[,] and placed in the custody of [the State]. [J.Y.M.] was originally removed from the care of [P.J.M.] on September 28, 2007, and was subsequently adjudicated as a child in need of care on December 19, 2007. The minor child remained in the care of [the State] until November 21, 2008, when she was returned to the care of [P.J.M., where] she remained for only [four] months prior to being removed again.
>
> []
>
> The first removal occurred after [the State] received and validated a report for "Lack of Adequate Supervision." The report and subsequent investigation . . . revealed that [P.J.M.] would leave his then three[-]year[-]old daughter alone and unsupervised while he would run

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rule 5–1 and 5–2, the initials of the parties are used to protect and maintain the privacy of the minor child involved in this proceeding.

[2]J.Y.M. is the minor daughter of Y.L.S. and P.J.M. Y.L.S. is a citizen of Honduras. P.J.M. was granted legal custody of J.Y.M. by the Honduran courts and returned to the United States with J.Y.M.

[3]Though the parental rights of Y.L.S., the biological mother of J.Y.M., were also terminated, she has not appealed the judgment, and her respective rights are not at issue herein.

errands; such as going to the store. In addition[,] the first investigation revealed that there had been other validated reports of "Lack of Adequate Supervision[]" when [P.J.M.] and [J.Y.M.] resided in both Beauregard Parish, Louisiana[,] and/or Houston, Texas.
[]

The second removal occurred after it was learned that [P.J.M.] had created a website on the internet[] and had placed on that website[] approximately [fifty-four] video clips wherein he interviewed his daughter concerning the time she spent in foster care with the [State]. As a result of the video clips and [an] incident that resulted in [P.J.M.] being arrested, [J.Y.M.] was again removed and placed in the care, custody[,] and control of [the State]. Shortly after the second removal[,] both [P.J.M.] and [J.Y.M.] were evaluated by a psychologist, [John Simoneaux, Ph.D.], who diagnosed that [P.J.M.] was suffering from a "delusional disorder," of the "[persecutory] and grandiose types." Dr. Simoneaux[] further wrote in his report[] that the condition of [P.J.M.] directly and adversely affected his ability to serve as the primary care giver for this child.

The petition requested that P.J.M.'s parental rights be terminated under the provisions

of La.Ch.Code art. 1015(4)[4] and La.Ch.Code art. 1015(5).[5] Specifically, the State

---

[4]Louisiana Children's Code Article 1015(4) provides:

Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

[5]Louisiana Children's Code Article 1015(5) provides:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

2

alleged that P.J.M. "has failed to work any part of his plan for reunification." The State also listed each instance where P.J.M. did not comply with his case plan for services. According to the State, P.J.M. failed:

(1) to obtain and maintain safe stable housing for himself and his daughter; (2) to be cooperative with . . . his case worker, in any manner and is often belligerent, insulting, threatening[,] and uses defamatory, insulting, degrading[,] and inappropriate language; (3) to keep [the State] informed of any changes in living arrangements and to provide his address and/or phone number; (4) to contact his [case] worker weekly, to give any updates and/or to plan home and family visits; (5) to provide [the State] with written verification of income and financial resources; (6) to obtain employment sufficient to meet his and/or the needs of his family; (7) to cooperate with support enforcement and verify employment, income[,] and other resources; (8) to pay the assessed amount of child support and/or to pay the parental contributions of [f]ifity [d]ollars ($50.00) per month to the State of Louisiana, until he is [assessed] a greater amount by Support Enforcement; (9) to address all legal issues in a timely manner to avoid future arrest; (10) to provide [the State] with information on how to contact the minor child's mother, [Y.L.S.]; (11) to provide names of relatives, addresses[,] and any other appropriate possible resources for his daughter; (12) to provide information on family health, family medical issues, and/or family medical histories; (13) to attend and participate in therapy sessions at the mental health clinic in his parish of domicile/residence and keep his [case] worker informed of dates and appointments; (14) to comply with any treatment plan developed for him and to gain insight into the nature and extent of his mental health condition; (15) to sign consents for the release of information so that [the State] could obtain and/or receive documentation from the various service [providers] including reports on therapy; (16) to write a daily schedule and behavior plan concerning protective issues dealing with privacy issues such as bath time, sleeping arrangements[,] and discuss same with his [case] worker; (17) to maintain visits with his child in a positive and nurturing manner in a supervised and therapeutic setting; (18) to be supportive of his child's needs for a protective placement; (19) to discuss how his videotaping compromised his child's ability to be credible and accept responsibility for the emotional abuse she experienced as a result of his actions; (20) to be supportive of his daughter's therapy and discuss same with his [case] worker; (21) to interact positively with department staff while in the presence of his daughter; (22) to provide a written affidavit concerning immunizations; and/or (23) to work any other portion of the provisions of the submitted case plan, not enumerated above.[6]

_____

[6]This list is P.J.M.'s entire case plan. According to the State, P.J.M. failed to comply with every element of his case plan.

On March 9, 2010, a termination hearing was held relative to the parental rights of Y.L.S. and P.J.M. Following said hearing, the trial court rendered judgment in favor of the State and terminated the parental rights of Y.L.S. and P.J.M. A judgment to that effect was signed on April 26, 2010. P.J.M. appeals.

## ASSIGNMENTS OF ERROR

P.J.M. asserts the following assignments of error:

1. The [t]rial [c]ourt did not have jurisdiction to hold a trial on a petition for termination of parental rights while the appeal on the judgments of adjudication and disposition were still pending on Appeal Docket Number JAC 09-001335. It was a violation of ethics and procedure for a district attorney who had already recused himself to participate in the trial. Therefore on March 9, 2010, Judge Lilynn Cutrer did not have jurisdiction to file and sign the [Judgment of Termination of Parental Rights and Certification for Adoption as to J.Y.M.].

2. No court in Louisiana has the jurisdiction to deprive a person of any right other than life, liberty, or property. There exists, in law, no due process to deprive [P.J.M.] of a parental right or [J.Y.M.] of her right to be parented by [P.J.M.]. Furthermore, no court in Louisiana has the jurisdiction to use civil proceedings to deprive a person of life or liberty before judgment[] pursuant to the Louisiana Constitution Article 1.2[] and the 6th Article in amendment to the Constitution of the United States of America. When the [S]tate petitions for the deprivation of any right other than life, liberty, or property[,] the [S]tate implicates and invokes the wrath of the 8th Article in amendment to the Constitution of the United States of America.

3. The [S]tate did not have grounds for a cause of action demanding the termination of the affiliation of [P.J.M.] with [J.Y.M.,] [b]ut the [S]tate has stated facts in support of grounds for a cause of action that, in fact, solely implicate the [S]tate as the real and proximate cause of the acts of man that cause[] damage and injury to [P.J.M.] and obliges the [S]tate by whose fault it happened to repair it pursuant to the Louisiana Civil Code Article 2315. The [S]tate has effectively brought and stated grounds for a law suit [sic] against itself[,] and the [S]tate is preemptively counterclaiming at the same time.

4. The mother, [Y.L.S.], is not subject to the laws of the United States of America nor the State of Louisiana. The affiliation between [Y.L.S.] and [J.Y.M.] were terminated improperly because the [t]rial [c]ourt did not have personal jurisdiction over the mother, [Y.L.S.], since she did not reside in the state[,] and she was not ever served with

4

process within the state.

5. The parental rights of [Y.L.S.] were terminated improperly pursuant to the Louisiana Children's Code because the record is bereft of any indication that she was ever adjudicated[,] even in abstentia.

## LAW AND DISCUSSION

### *Standard of Review*

Our Louisiana Supreme Court has stated the following relative to the termination of parental rights:

An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. *State ex rel. K.G.*[,] 02-2886, p. 4 (La. 3/18/03), 841 So.2d 759, 762. This court has repeatedly set forth the concerns regarding the involuntary termination of parental rights by OCS, as follows:

In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

The State's parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve

5

permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.

Title X of the Children's Code governs the involuntary termination of parental rights. [La.Ch.Code] art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, [La.Ch.Code] art. 1015, but the judge must also find that the termination is in the best interest of the child. [La.Ch.Code.] art. 1039. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. [La.Ch.Code] art. 1035(A).

*Id.* at 4-5, 841 So.2d at 762-63 (*citing State in the Interest of J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806, 810-811; *State ex rel. C.J.K.*, 00-2375 (La. 11/28/00), 774 So.2d 107) (citations omitted).

*State ex rel. D.L.R.*, 08-1541, pp. 11-12 (La. 12/12/08), 998 So.2d 681, 687-88.

In the case at bar, the trial court found that the State had met its burden of proof by clear and convincing evidence that the termination of the parental rights of P.J.M. was in the best interest of the minor child, J.Y.M.

***Assignment of Error No. 1***

P.J.M. contends that it was error for the trial court to conduct the termination hearing on March 9, 2010, when an appeal of the trial court's judgment dated June 16, 2009, wherein J.Y.M. was adjudicated as a child in need of care, had been filed and was still pending before this court. Citing La.Ch.Code art. 336, the State argues that the trial court acted within its authority when it allowed the termination hearing to proceed.

6

Louisiana Children's Code Article 336 provides:

> A. Except as provided by Paragraphs B and C of this Article, the effect of a judgment shall not be suspended by an appeal, unless the trial court or a court of appeal directs otherwise.

> B. A parent shall have the right to appeal suspensively from any ruling terminating his parental rights, including a judgment of adoption, notwithstanding the power of the court to order the commencement or continuation of temporary custody of the child with persons other than the parents.

> C. A suspensive appeal shall not suspend the execution of the judgment insofar as the judgment relates to custody or child support.

Pursuant to La.Ch.Code art. 336(A), the trial court's adjudication judgment did not suspend the proceedings in this matter; therefore, the trial court did not err by proceeding with the termination hearing prior to receiving this court's disposition on P.J.M.'s pending appeal of the adjudication judgment.[7]

***Assignment of Error No. 2***

P.J.M. challenges the State's authority to remove J.Y.M. from his custody and to proceed with terminating his parental rights, stating "[t]here can exist no lawful process, procedure, or scheme to deprive [P.J.M.] of a parental right or to deprive [J.Y.M.] of her right to be parented by [P.J.M.]" The Louisiana Children's Code grants the State such authority.

Title X of the Louisiana Children's Code governs involuntary termination of parental rights. The authority that P.J.M. challenges is specifically granted to the State by La.Ch.Code art. 1001, which provides:

> The purpose of this Title is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial

---

[7]The trial court's June 16, 2009 judgment wherein J.Y.M. was adjudicated as a child in need of care was affirmed by this court. *See State in the Interest of J.Y.M.*, 09-1335 (La.App. 3 Cir. 8/4/10), 45 So.3d 1128.

process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. In all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved. Termination of parental rights is to be considered the first step toward permanent placement of the child in a safe and suitable home, and if at all possible, to achieve the child's adoption. The procedural provisions of this Title shall be construed liberally. The proceedings shall be conducted expeditiously to avoid delays in resolving the status of the parent and in achieving permanency for children.

Our review of the record reveals that the State has followed the procedural mandates contained within the Louisiana Children's Code, and that there is no manifest or legal error in the trial court's judgment. Therefore, we find no merit to P.J.M.'s second assignment of error.

***Assignment of Error No. 3***

P.J.M., in brief, asserts that "[t]he [S]tate did not have grounds for a cause of action demanding the termination of the affiliation of [P.J.M.] with [J.Y.M.]" The State asserts that when it filed its Petition for Termination of Parental Rights and Certification of Minor Child for Adoption in January of 2010, J.Y.M. had been in the custody of the State for fifteen of the last twenty-two months. The State also argues that it has proven that P.J.M. has failed to substantially comply with his case plan and that there is no reasonable expectation of improvement in his conduct or living conditions.

Louisiana Children's Code Article 1036 governs proof of parental misconduct and states that a lack of parental compliance with the family case plan and the lack of any reasonable expectation of significant improvement in the near future may be evidenced as follows:

C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

8

(1)  The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D.  Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

Catherine Weinnig, the foster care manager in charge of J.Y.M.'s case, testified at the termination hearing as to her involvement in this matter since J.Y.M. entered the State's custody in March of 2009.  According to Ms. Weinnig, part of P.J.M.'s

9

case plan included maintaining stable housing, keeping her informed of his living arrangements, and paying fifty dollars per month for his contribution towards J.Y.M.'s care. However, Ms. Weinnig testified that the only part of the case plan that P.J.M. ever complied with was visitation; yet, even his visitations stopped after September 25, 2009.

Dr. John Simoneaux, a psychologist, testified at the termination hearing that he evaluated both P.J.M. and J.Y.M. Dr. Simoneaux diagnosed P.J.M. with delusional disorder, persecutory and grandiose type, as well as narcissistic personality disorder. According to Dr. Simoneaux, P.J.M.'s prognosis is poor because his disorder is difficult to treat; most often, individuals with this disorder often see no need for treatment. Dr. Simoneaux opined that P.J.M.'s disorder manifested itself through P.J.M.'s belief that J.Y.M. was sexually abused while in the State's custody from September of 2007 through November of 2008. Dr. Simoneaux further opined that P.J.M.'s actions towards J.Y.M. constituted emotional abuse and that his disorder adversely affected his ability to properly parent J.Y.M. It was Dr. Simoneaux's opinion that it would be in the best interest of J.Y.M. that she not return to the care of P.J.M.

Also called to testify was Terri Theaux, a licensed professional counselor. Ms. Theaux was accepted as an expert in the field of mental health counseling. Ms. Theaux testified that she counseled J.Y.M. and that it was also her opinion that it would be in the best interest of J.Y.M. that she not return to the care of P.J.M.

At trial, there was no evidence offered to refute the State's evidence that P.J.M. failed to substantially comply with his case plan. Further, the record also clearly supports the State's assertion that P.J.M. demonstrates unhealthy behavior. The trial

court did not err in concluding that P.J.M.'s ability to care for J.Y.M. is clearly impeded by his behavioral disorder, which remains untreated, and that it would be in the best interest of J.Y.M. that she not return to the care of P.J.M.

Based on our thorough review of the record in these proceedings, we find no manifest error by the trial court. We also find that the trial court was not clearly wrong in finding that the State satisfied its burden under La.Ch.Code art. 1015. We further conclude that it is in the best interest of the minor child, J.Y.M., that the parental rights of P.J.M. be terminated and that she be certified for adoption.

*Assignments of Error No. 4 & No. 5*

P.J.M.'s final two assignments of error present questions relative to the propriety of the trial court's termination of Y.L.S.'s parental rights. The claims of Y.L.S. are not before this court. Y.L.S., who was represented by court-appointed counsel at the trial of this matter, has not filed an appeal. Further, P.J.M. is not the proper party to assert rights on behalf of Y.L.S. Therefore, we do not consider the issues set forth in P.J.M.'s fourth and fifth assignments of error.

*Motion for Clarification and for Verification of Jurisdiction*

P.J.M. has filed with this court a Motion for Clarification and for Verification of Jurisdiction. The law does not recognize such a motion or procedural device. This court has already addressed the issue of jurisdiction under Assignments of Error numbers 2, 4, and 5 of this opinion. Additionally, P.J.M. is not the proper party to assert any alleged rights of his wife, Y.L.S. P.J.M.'s motion is, therefore, denied.

**DECREE**

For the foregoing reasons, the trial court's judgment dated March 9, 2010, terminating the parental rights of P.J.M. relative to the minor child, J.Y.M., is

11

affirmed.  P.J.M.'s Motion for Clarification and for Verification of Jurisdiction is denied.  All costs of these proceedings are assessed against Defendant/Appellant, P.J.M.

**AFFIRMED.**